## WALDRON v. DIRECTOR GENERAL OF RAILROADS.

(Circuit Court of Appeals, Fourth Circuit. April 6, 1920.)

No. 1777.

1. **Railroads** ☞275(4)—**Liable for injury to employé of shipper from defective car.**

A carrier, furnishing cars to be loaded for shipment, is liable for injuries to the shipper or his employés, due to a defect in a car which might have been discovered by reasonable care in inspection, and it cannot impose this duty to furnish cars reasonably safe on the shipper to its own relief from liability for injury to an employé of the shipper.

2. **Master and servant** ☞99—**Railroads** ☞266—**Both carrier and shipper liable for negligence in furnishing defective car to employés for loading.**

If the carrier is negligent in furnishing a defective car to the shipper, and the shipper in turn is negligent in furnishing it to his employé to be loaded, the carrier and shipper are both liable for resulting injury to the employé, but as between carrier and shipper the liability of the carrier is primary.

3. **Railroads** ☞278(2)—**Use of obviously dangerously defective car assumption of risk.**

While neither the shipper nor his employé owes any duty to the carrier to search for defects, the use of a car obviously so defective as to be dangerous would be either assumption of risk or contributory negligence on the part of the person operating it, according to the circumstances.

4. **Courts** ☞372(3)—**Federal courts not bound by state decisions on matter of general law.**

The question of liability of a carrier for injury to an employé of a shipper caused by a defective car furnished for loading is one of general law, in which state decisions are not binding on the federal courts.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Railroads ⟠282(9)—Assumption of risk by employé of shipper using defective car question for jury.**

Whether an employé of a shipper, injured by reason of a defective car furnished for loading by a carrier, was chargeable with assumption of risk or contributory negligence, *held* questions for the jury.

**6. Master and servant ⟠217(1)—Risks from master's negligence, not obvious, are not assumed.**

Risks not naturally incident to the occupation, but arising out of the master's negligence, the employé is not treated as assuming, until he becomes aware of the defect or disrepair, and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them.

In Error to the District Court of the United States for the Southern District of West Virginia, at Bluefield; Benjamin F. Keller, Judge.

Action by Earl Waldron against the Director General of Railroads. Judgment for defendant, and plaintiff brings error. Reversed.

George W. Howard, of Welch, W. Va., for plaintiff in error.

Graham Sale, of Welch, W. Va. (Sale & Tucker, of Welch, W. Va., and F. M. Rivinus, of Philadelphia, Pa., on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

WOODS, Circuit Judge. The plaintiff, an employé of the Solvay Collieries Company, alleges liability of the Director General of Railroads for the loss of his arm in the operation of a coal car, on the ground that the accident was due to a defective brake on the car. The controlling question is whether the District Court was right in directing a verdict for defendant on the evidence offered by the plaintiff. Plaintiff's case was as follows:

The Norfolk & Western Railroad furnished on a side track cars to be loaded with coal at the tipple of the Solvay Collieries Company. The cars were selected by the railroad company, without suggestion from the coal company. The railroad company knew they were loaded on a track of 2 per cent. grade, while they were held by brakes. On May 30, 1919, plaintiff and Ed Clifton, his assistant, were engaged in loading a car from the tipple. When the car was about half loaded, Clifton, who operated the brake, told plaintiff it was weak, and he did not know whether it would hold or not. It was especially important to keep the coal car in control, because there was a car below on the same track from which several persons were unloading furniture. Under these circumstances, as a precaution, the plaintiff placed a scotch on the track about a car length below to stop the car in case the brake should not hold. In the course of loading the car, it was necessary to move and stop it several times. The brakes held the car at these stops. When the loading was completed, and Clifton released the brakes, so that the car might move forward by gravity, he called to the plaintiff that the brakes would not hold. Seeing the car was not controlled by the brake and the scotch, which he had placed on the

track, and that it would collide with the furniture car in which men were working, the plaintiff, in the effort to control the car, placed another piece of timber before one of the rear wheels of the truck. In doing so his hand was caught by the wheel and his arm cut off. An experienced machinist and inspector examined the brake after the accident, and found a slack in the brake due to worn shoes.

When the empty coal cars were placed on the siding, the coal company took entire charge of them to the exclusion of the railroad company until they were returned loaded with coal for shipment. The railroad company sometimes furnished cars with defective brakes, and sometimes with no brakes. Plaintiff was in charge of the tipple, and either he or his helper, Clifton, was expected by the coal company to examine the brakes before the loading commenced. The outside foreman of the coal company testified:

"I give them instructions that, if they found a car that they couldn't load, to drop it on through. We have had cars in there without any brakes on them at all. If there was plenty of cars, and if there was a shortage of cars, to try to load everything there was there, if they could do it."

He testified further there was no shortage of cars on that day. Plaintiff, according to his testimony, did not know very much about brakes, and did not examine them.

[1-3] The following statement of the law will hardly be questioned, as required by reason and comparison of the principles announced in the cases below cited: A carrier, furnishing cars to be loaded for shipment, is liable for injuries to the shipper or his employé, due to a defect in the car which might have been discovered by reasonable care in inspection. The carrier cannot impose this duty to furnish cars reasonably safe on the shipper, to its own relief from liability for injuries to an employé of the shipper. If the carrier is negligent in furnishing a defective car to the shipper, and the shipper in turn is negligent in furnishing it to his employé to be loaded, the carrier and shipper are both liable to the injured employé; for the proximate cause of the injury is the defective car. But as between the carrier and the shipper the liability of the carrier is primary, for the reason that the shipper has a right to assume that cars furnished have been inspected by the carrier and found reasonably safe. While neither the shipper nor his employé owe any duty to the carrier to search for defects, the use of a car obviously so defective as to be dangerous would be either assumption of risk or contributory negligence, according to the circumstances on the part of the person operating it. Baltimore & P. R. v. Mackey, 157 U. S. 72, 15 Sup. Ct. 491, 39 L. Ed. 624; Texas & Pacific Ry. v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188; Chicago, etc., R. Co. v. Pritchard, 168 Ind. 398, 79 N. E. 508, 81 N. E. 78, 9 L. R. A. (N. S.) 857, and note; Ladd v. New York, etc., R. Co., 193 Mass. 359, 79 N. E. 742, 9 L. R. A. (N. S.) 874, 9 Ann. Cas. 988, and note; D'Almeida v. Boston, etc., R. Co., 209 Mass. 81, 95 N. E. 398, Ann. Cas. 1913C, 751, and note; Pennsylvania R. R. Co. v. Snyder, 55 Ohio St. 342, 45 N. E. 559, 60 Am. St. Rep. 700; Pennsylvania R. R. v. Hummel, 167 Fed. 89, 92 C. C. A. 541.

[4] Risque's Adm'r v. Chesapeake & O. Ry. Co., 104 Va. 476, 51 S. E. 730, and Anderson v. Baltimore & O. R. Co., 74 W. Va. 17, 81 S. E. 579, are relied on as holding that the duty is on the shipper who receives cars from a carrier to be loaded to inspect them for the protection of his employés to the exemption of the carrier. The first case cited does expressly so hold. The fact that the injury was to the property of third persons not employés of the shipper may distinguish the second case. But, if it be conceded that both cases hold the doctrine contended for, we think it is opposed to reason and the great weight of authority. The question being one of common law and general jurisprudence, a federal court must determine it for itself. Gardner v. Michigan Central R. R., 150 U. S. 349, 358, 14 Sup. Ct. 140, 37 L. Ed. 1107.

There was evidence that the railroad company furnished a car with a seriously defective brake, knowing that the brake would be depended on to hold the car loaded with coal on a steep grade, and that the defect in the brake was the proximate cause of the accident. If nothing else appeared, the liability of the railroad company would result.

[5, 6] The question of assumption of risk was for the jury. The risks not naturally incident to the occupation, but arising out of the master's negligence, "the employé is not treated as assuming, until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them." Seaboard Air Line v. Horton, 233 U. S. 492, 504, 34 Sup. Ct. 635, 640 (58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475); Gila Valley, etc., Ry. Co. v. Hall, 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521. A railroad company, furnishing an unsafe car, certainly stands in no better position than the master of the servant injured. It is true that, after the loading was half completed, the plaintiff had notice of his coworker's opinion that the brake was weak. But it had held in process of loading, and there is no evidence that plaintiff or his coworker, Clifton, knew there was any specific defect; and the defendant could not put upon the plaintiff or his employer the duty of diligence in discovering the defect. It follows that the question whether mere notice of weakness was under the circumstances sufficient to charge the plaintiff with notice of both the defect and the danger was for the jury.

Nor does the evidence necessarily require the inference of contributory negligence. The plaintiff and his coworker, Clifton, expected the scotch to so retard the car that the brake would hold it. Upon the jury's view of the reasonableness of this precaution and expectation will depend their decision of that issue.

When the plaintiff discovered that the brake and the scotch first provided failed to hold the car in control, it was not negligence in the emergency to try to stop the car, to save the life or property of others, by placing another scotch under the wheels, unless the action taken was heedless or reckless, or the emergency was brought about by plaintiff's own fault. The evidence did not warrant the withdrawal of

that question from the jury. Union Pacific R. Co. v. McDonald, 152 U. S. 262, 281, 14 Sup. Ct. 619, 38 L. Ed. 434; 18 R. C. L. 654, 655, and authorities cited.

Reversed.