## CHESAPEAKE & O. RY. CO. v. COCHRAN.

Circuit Court of Appeals, Fourth Circuit.
October 21, 1927.

No. 2636.

1. Railroads ⟨⇒⟩282(9)—Evidence as to defective brake on car causing injury to consignee's employee held for jury.

In action against railroad for death of employee of coal company, to whom railroad had delivered carload of rails, evidence relative to negligence of railroad company in furnishing a car with defective brake *held* sufficient for jury.

2. Railroads, ⟨⇒⟩282(9)—Evidence as to contributory negligence of consignee's employee, killed in attempt to move car, held for jury.

In action for death of employee of coal company, to whom railroad had delivered carload of rails, resulting. from inability to operate brake on car, evidence as to contributory negligence of deceased *held* sufficient for jury.

3. Master and servant ⟨⇒⟩227(I)—"Contributory negligence" involves notion of some fault or breach of duty.

"Contributory negligence" involves notion of some fault or breach of duty on part of employee, and is sometimes defined as failure to use such care for his safety as ordinarily careful employees in similar circumstances would use.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contributory Negligence.]

4. Master and servant ⟨⇒⟩203(I)—"Assumption of risk" may be free from fault or negligence on part of employee.

Assumption of risk,. even though risk may be obvious, may be free from any suggestion of fault or negligence on part of employee, dangers that are normally and necessarily incident to occupation being assumed by workmen of mature years, whether they are actually aware of them or not.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Assumption of Risk.]

5. Railroads ⟨⇒⟩282(9)—Assumption of risk by consignee's employee, attempting to operate brake on freight car, held for jury.

In action against railroad for death of employee of coal company, when moving car in which delivery of rails had been made, resulting from inability to operate brake thereon, question of assumption of risk *held* for jury under evidence.

6. Railroads ⟨⇒⟩275(I)—Railroad furnishing cars is liable only for ordinary care, and for defects discoverable by reasonable care in inspection.

Railroad, furnishing cars to be loaded or unloaded, is liable only for ordinary care, and for such defects as might have been discovered by reasonable care in inspection.

7. Railroads ⟨⇒⟩282(14)—Instruction held erroneous, as holding railroad to absolute duty of furnishing proper car to consignee.

In action against railroad for death of employee of coal company, when car in which rails were delivered failed to respond to brake, instruction placing duty on railroad company of furnishing car with proper appliances, and to properly inspect it at reasonable times and places, *held* erroneous, in that it held railroad to absolute duty of furnishing a proper car.

8. Appeal and error ⟨⇒⟩1170(9)—Trial ⟨⇒⟩252(9)—Instruction requiring railroad to instruct consignee relative to use of particular brake device held erroneous, as not based on evidence, and to require reversal (Judicial Code, § 269, as amended by Act Feb. 26, 1919 [28 USCA § 391]).

In action against railroad for death of employee of coal company, to whom carload of rails was delivered, resulting when brake failed to operate on car, instruction requiring railroad company to instruct coal company relative to use of particular brake device *held* erroneous, in absence of evidence disclosing that brake was of unusual nature, and to require reversal, notwithstanding Judicial Code, § 269, as amended by Act Feb. 26, 1919 (28 USCA § 391 [Comp. St. § 1246]).

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; George W. McClintic, Judge.

Action by Lottie Cochran, administratrix of the estate of Clyde Cochran, deceased, against the Chesapeake & Ohio Railway Company, removed from state court. Judgment for plaintiff, and defendant brings error. Reversed.

C. W. Strickling, of Huntington, W. Va. (C. N. Davis, of Huntington, W. Va., on the brief), for plaintiff in error.

B. J. Pettigrew, of Charleston, W. Va. (C. L. Lilly, of Beckley, W. Va., on the brief), for defendant in error.

Before PARKER, Circuit Judge, and SOPER and ERNEST F. COCHRAN, District Judges.

ERNEST F. COCHRAN, District Judge. This is an action instituted in the circuit court. of Raleigh county, W. Va., by Lottie Cochran, administratrix of the estate of Clyde Cochran, deceased, against the Chesapeake & Ohio Railway Company, to recover damages for the death of her intestate, due to the alleged negligence of the railway company. The case was removed to the United States District Court for the Southern District of West Virginia, and a trial before a jury resulted in a verdict and judgment for the plaintiff for $10,000, and the railway company has brought the case by writ of error to this court. The plaintiff in error was the defendant, and the defendant in error the plaintiff, in the District Court, and the parties will be referred to as they appeared in that court.

By the assignments of error, the defendant presents the following propositions: (1) That the evidence shows that as a matter of law the defendant was not negligent; (2) that as a matter of law the plaintiff's decedent was guilty of contributory negligence; (3) that the plaintiff's decedent assumed the risk of the injury received by him which resulted in his death; (4) that the court's charge to the jury in effect made the railway company an insurer of its appliances; (5) that the court erred in allowing the jury to say whether or not there was a duty on the part of the railway company to give information or instruction how the particular brake device in question should be used. There was evidence either establishing or tending to establish the following facts:

Baltimore, Rochester & Pittsburgh Railway car No. 18911 was loaded on the tracks of the Baltimore & Ohio Railroad Company, at Huntington, W. Va., with steel rails, and by that company delivered to the Chesapeake & Ohio Railway Company at Huntington for transportation to the mines of the Raleigh Coal & Coke Company, Raleigh, W. Va. Clyde Cochran, the deceased, was an employee of the coal company. The car was placed for unloading above the tipple of one of the mines of the coal company, the consignee, on a side track used in connection with the mine, which extended from and through the tipple to a point several hundred feet above it. This side track was on a grade of from 2 to 3 per cent. Eight days after the placement of the car, the deceased, together with Charles Webb, another employee of the coal company, was sent by the mine superintendent to drop the car down to a point above the tipple by gravitation. Webb was the regular car dropper at that mine, whose duty it was to drop empty cars, as well as cars loaded with mine supplies, down to the tipple for use at the mine. The deceased was regularly employed in the repair shop of the mine; but sometimes, when necessity arose, he assisted in dropping cars. These two men were in charge of Claude Wilburn, who was a sort of under superintendent, in charge of the crew and cars at the drift mouth of the mine. The car was standing at least 200 feet above the tipple on an inclined track, with a "chock" or scotch under one of the front wheels.

When the three men reached the car (there is some conflict in the evidence as to whether all three went together or whether after Wilburn and the deceased got to the car, Webb was called from the tipple by Wilburn to drop the car), Wilburn, in charge of the men, asked Webb, the regular car dropper, who was on the front end of the car as it would move toward the tipple, where the only brake on it was located, whether he was ready, after which Wilburn knocked the "chock" from under the wheel with a bar, which started the car rolling. When the car started, the deceased and Wilburn caught the stirrups on the rear; the deceased climbed over the rails with which the car was loaded, to the front end, where Webb was working at the brake, while Wilburn remained at the rear. Webb, with one foot inside the car and the other on the end sill, attempted to work the brake, but failed to make it work. When Webb's efforts in attempting to work the brake had no effect on the speed of the car, the deceased said, "Maybe I can work it;" and Webb said, "I don't know whether you can or not. I don't expect you can." The deceased, then standing with both feet inside the car, tried to work the brake; but the car continued to roll on toward the tipple, where coal cars were standing on the track.

When Wilburn saw the car was getting away, he jumped off. After Webb abandoned his efforts to work the brake, he told the deceased that the brake was no good, and that it was no use to fool with it; but the deceased continued to try to operate it. The car rolled on, struck an empty car, which threw the rails with which it was loaded against the legs of the deceased and pinned him inside the car, and the two cars, running together, went on and struck a car loaded with coal, which stopped both cars and mashed the legs of the deceased so badly that he died in the hospital next day as the result of his injuries. Webb testified that, when he saw he could not do anything with the brake, he got out and hung on the stirrup, and jumped off just before the car struck the empty car. When this occurred, the deceased was still inside the car, attempting to operate the brake. The type of brake with which the car was equipped was an unusual one for the locality where the deceased was employed. Webb, however, testified that he was familiar with its use, and understood how to operate it.

The defendant contended that the car was in good condition when it was delivered by the railway company to the employer of the deceased, and that the accident was caused by the failure of the employees of the coal company to operate it properly; in other words, that the accident was caused by their negligence, proceeding either from mere carelessness or from reckless attempt to operate a device that they did not understand. Evi-

dence in support of this theory was given, not only in a somewhat negative form by certain employees of the company whose duty it was to inspect the car prior to the accident, but also in direct and positive form by employees of the railway company who examined the car after the accident. There was, however, positive testimony that the car began to roll immediately when the "chock" was removed, and that the brake did not work properly when Webb tried it, although he testified that he was familiar with its operation. It appears that to operate this brake properly it was necessary to throw a certain "weight" on the sill of the car, so that a certain "dog" or latch would engage the teeth on the underside of the sill ratchet of the brake; and the defendant lays much stress on the fact that Webb did not testify positively that either he or the deceased set the "dog" properly when trying to operate the brake.

But while the witnesses were questioned at length as to what they did, the defendant's attorney never asked any of them the specific question whether the "dog" was properly set or not. There was also evidence for the plaintiff that, two days after the accident, the brake was examined and tried, and would not operate properly, because, as stated by the witnesses in their testimony, there was too much slack in the chain, the effect of which was that, when the brake was wound as tightly as it could be wound, the shoe would remain loose, and not make proper contact with the wheel. There was evidence on the part of the defendant that the car, before arriving at the mines, had been inspected at several points, and no defects found in the brake. There was evidence given for the defendant, also, to the effect that the day after the accident the car was placed on the same incline and that the brake held the car. The plaintiff's witnesses testified that, when this was done, the car was coupled to other cars, which held it in place; but this was denied by defendant's witnesses.

The law applicable to this case has been settled by this court in the case of Waldron v. Director General. In that case, this court, speaking through the late Judge Woods, said:

"A carrier, furnishing cars to be loaded for shipment, is liable for injuries to the shipper or his employé, due to a defect in the car which might have been discovered by reasonable care in inspection. The carrier cannot impose this duty to furnish cars reasonably safe on the shipper, to its own relief from liability for injuries to an employé of the shipper. If the carrier is negligent in furnishing a defective car to the shipper, and the shipper in turn is negligent in furnishing it to his employé to be loaded, the carrier and shipper are both liable to the injured employé; for the proximate cause of the injury is the defective car. But as between the carrier and the shipper the liability of the carrier is primary, for the reason that the shipper has a right to assume that cars furnished have been inspected by the carrier and found reasonably safe. While neither the shipper nor his employé owe any duty to the carrier to search for defects, the use of a car obviously so defective as to be dangerous would be either assumption of risk or contributory negligence, according to the circumstances on the part of the person operating it. * * * There was evidence that the railroad company furnished a car with a seriously defective brake, knowing that the brake would be depended on to hold the car loaded with coal on a steep grade, and that the defect in the brake was the proximate cause of the accident. If nothing else appeared, the liability of the railroad company would result." Waldron v. Director General (C. C. A. 4th) 266 F. 196, 198, 199.

[1] The defendant's first contention is that, as a matter of law, the evidence does not show any negligence on its part. Under the principles stated in the case we have cited, this contention cannot be sustained. There was ample evidence to show that the brake was defective, and that the defect could have been discovered by reasonable inspection. The conflict in the testimony in those respects was properly submitted to the jury. The defendant knew that the brake would be depended upon to hold the car loaded with steel upon a steep grade, and there was evidence to show that the defect in the brake was the proximate cause of the accident. The question of negligence, therefore, under the decisions, is not one of law, but one of fact for the jury. Waid v. C. & O. Ry. Co. (C. C. A. 4th) 14 F.(2d) 90; Farley v. N. & W. Ry. Co. (C. C. A. 4th) 14 F.(2d) 93.

[2] The next contention of the defendant is that the evidence shows that the deceased was guilty of contributory negligence as a matter of law. This contention cannot be sustained. It is based on the fact that the deceased remained in the car after Webb, the regular car dropper, had left the car because the brake would not operate, and it is said that this was negligence on the part of the deceased. It is to be observed that according to Webb's testimony he was on the outside of the car, and in a position to leave the car shortly before it struck the empty car; but at that

time the deceased was inside the car. The jury may very well have decided that the deceased was in no position to leave the car at that time. Moreover, there was danger that the car, if not checked, would injure property of the deceased's employer, and might endanger the lives of others further down the track. This court has held that, in such an emergency, it is not negligence to try to stop the car, unless the action taken was heedless or reckless, or the emergency was brought about by the deceased himself. Waldron v. Director General, supra. See, also, Dunagan v. Appalachian Power Co. (C. C. A.) 11 F.(2d) 65, 66. In this moment of danger, not only to himself, but to the lives and property of others, the jury might well have decided it was best for the deceased to remain where he was and try to stop the car. At any rate, these are questions for the jury to decide, and they have decided them in favor of the plaintiff. Waid v. C. & O., supra; Farley v. N. & W. Ry. Co., supra.

[3, 4] The third contention of the defendant is that the plaintiff cannot prevail, because the deceased assumed the risk. There is a legal distinction between contributory negligence and assumption of risk. Contributory negligence involves the notion of some fault or breach of duty on the part of the employee, and since it is ordinarily his duty to take some precautions for his own safety when engaged in a hazardous occupation, contributory negligence is sometimes defined as the failure to use such care for his safety as ordinarily careful employees in similar circumstances would use. Seaboard v. Horton, 233 U. S. 492, 503, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475. On the other hand, the assumption of risk, even though the risk may be obvious, may be free from any suggestion of fault or negligence on the part of the employee. Dangers that are normally and necessarily incident to the occupation are assumed by workmen of mature years, whether they are actually aware of them or not. Seaboard v. Horton, supra. But risks not naturally incident to the occupation may arise out of the failure of the employer to exercise due care with respect to providing suitable and safe appliances, and these the employee is not treated as assuming, until he becomes aware of the defect and of the risks arising from it, unless the defect and the risks alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. Seaboard v. Horton, supra, 504 (34 S. Ct. 635).

[5] In the case at bar, the deceased was not aware of the defect in the brake, nor was it obvious. Whether he assumed the risk by remaining on the car after the danger was discovered was a fact to be determined by the jury; and what we have said in reference to contributory negligence applies equally to the question of the assumption of risk in that aspect. Waid v. C. & O., supra; Farley v. N. & W. Ry. Co., supra.

The fourth ground upon which the defendant seeks a reversal is that the court in its charge placed upon the defendant the burden of an insurer of the proper condition of its appliances. The defendant bases this assignment of error on the following portion of the charge of the court, to wit: "The duty of the railroad company was to furnish a car with proper appliances, and to properly inspect it at reasonable times and places, and to see if it was in proper condition."

The record shows that the defendant "specifically objected and excepted" to this portion of the charge before the jury retired to consider their verdict. In Seaboard v. Horton, the Supreme Court of the United States used the following language: "The common-law rule is that an employer is not a guarantor of the safety of the place of work or of the machinery and appliances of the work; the extent of its duty to its employés is to see that ordinary care and prudence are exercised, to the end that the place in which the work is to be performed and the tools and appliances of the work may be safe for the workmen." Seaboard v. Horton, 233 U. S. 492, 501, 34 S. Ct. 635, 639 (58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475). See, also, Yazoo & M. V. R. R. Co. v. Mullins, 249 U. S. 531, 533, 39 S. Ct. 368, 63 L. Ed. 754; Armour & Co. v. Russell (C. C. A. 8th) 144 F. 614, 6 L. R. A. (N. S.) 602.

[6] The same rule applies where a railroad furnishes cars to be loaded or to be unloaded, and in such cases the company is liable only for ordinary care and for such defects as might have been discovered by reasonable care in inspection. Waldron v. Director General, supra; 22 R. C. L. 932.

[7] In the present case, while the court charged the jury that, in order to find for the plaintiff, they must reach the conclusion that the defendant was negligent, yet nowhere in the charge was negligence defined, and nowhere did the court charge that the railroad was under the duty to use only ordinary care. The jury, therefore, would be warranted under this charge in holding the railroad to the absolute duty of furnishing a proper car.

This view of the effect of the charge is accentuated by a later portion of the charge, where the court charged the jury as follows:

"Now, if you think that the railway company was negligent in not having a proper brake on that car, why you would be justified, if you think so, in finding for the plaintiff; if, on the contrary, you think the railroad company had a proper brake on that car, and that these employees of the coal company either did not study it, or did not know how to study it, but attempted to use something they knew nothing about, and the brake was in proper shape, and they assumed the risk, and contributed to their own trouble, why, then, you would find for the defendant."

When the whole charge is considered, we think that the jury could hardly have failed to draw the conclusion that, if the railroad company failed to furnish a proper car, even though it may have used ordinary care in furnishing such a car, and may have used reasonable care to discover defects, the company would be liable. The charge complained of here is very similar to the charge in Seaboard v. Horton, supra, which the Supreme Court held faulty, because it imposed upon the employer an absolute responsibility for the safe condition of the appliances of the work, instead of limiting the responsibility to the exercise of reasonable care. See, also, Yazoo & M. V. R. R. Co. v. Mullins, supra.

The fifth ground upon which the defendant seeks a reversal is based upon the following portion of the court's charge, to wit: "Now, it seems to me from the evidence that this was a strange, unusual, and unknown, you might say, in this region, brake device. Now, it is contended by the defendant that this accident happened by reason of the lack of knowledge on the part of the employees of the coal company, or a lack of understanding on their part, in using this device. That brings up a question of whether there was any duty on the part of the railway company when they brought in a car of this type, with this strange device on it as a brake, whether it was not further their duty to give such information to those whom—to somebody with the coal company, whom they knew, sooner or later, would have to deal with this car, in order to instruct them how to use this particular brake device. That question is left to you, whether that is proper or not."

The record shows that the defendant "specifically objected and excepted" to this portion of the charge before the jury retired. The defendant's counsel argues in substance that this portion of the charge was erroneous, in that it allowed the jury to impose on the railroad company a legal duty which was not warranted under the facts of the case. [8] There are cases in which an appliance is of such a dangerous nature, and so unusual and unknown that it would be the duty of the railroad company to give some information, so as to put persons using it on their guard. But we agree with counsel for the defendant that in this particular case the evidence does not disclose that the brake here in question was of such an unusual nature as to require such information or notice to be given. We think, therefore, this portion of the charge complained of was erroneous, and afforded the jury an opportunity to place upon the railroad company a duty which the facts of the case did not warrant.

We have not overlooked section 269 of the Judicial Code, as amended by the Act of February 26, 1919 (40 Stat. 1181, U. S. Code, tit. 28, § 391 [28 USCA § 391; Comp. St. § 1246]), whereby, on the hearing of an appeal, we are required to give judgment after an examination of the entire record, without regard to technical errors or defects, which do not affect substantial rights of the parties. This salutary legislation has been construed in a number of cases. Horning v. District of Columbia, 254 U. S. 135, 41 S. Ct. 53, 65 L. Ed. 185; Dye v. U. S. (C. C. A. 4th) 262 F. 6; Sneierson v. U. S. (C. C. A. 4th) 264 F. 268, certiorari denied 253 U. S. 490, 40 S. Ct. 584, 64 L. Ed. 1028; Honeycutt v. U. S. (C. C. A. 4th) 277 F. 941, 944; Carpenter v. U. S. (C. C. A. 4th) 280 F. 598, 600; Bray v. U. S. (C. C. A. 4th) 289 F. 329; Haywood v. U. S. (C. C. A. 7th) 268 F. 795, 798; Rich v. U. S. (C. C. A. 8th) 271 F. 566, 570; Reid v. Baker (C. C. A. 9th) 288 F. 969, 970; Simpson v. U. S. (C. C. A. 9th) 289 F. 188, 191; Shuman v. U. S. (C. C. A. 5th), 16 F. (2d) 457; Bain v. U. S. (C. C. A. 6th) 262 F. 664, certiorari denied 252 U. S. 586, 40 S. Ct. 396, 64 L. Ed. 729; Sartain v. U. S. (C. C. A. 5th) 16 F.(2d) 704; Matthews v. U. S. (C. C. A. 7th) 300 F. 556; Armstrong v. U. S. (C. C. A. 9th) 16 F.(2d) 62; Garcia v. U. S. (C. C. A. 1st) 10 F.(2d) 355. But we do not think that any of the cases in which an error of the trial court was held not to affect a substantial right goes so far as would be required in order to sustain the charge in the case at bar.

For the reasons already given, we are unable to say that the errors indicated in the charge were not prejudicial to the plaintiff in error.

Reversed.