## ST. LOUIS–SAN FRANCISCO RY. CO. v. EWAN.*

Circuit Court of Appeals, Eighth Circuit.
May 16, 1928.

No. 7723.

1. Railroads ⬁275(4)—Carrier must use ordinary care to deliver cars reasonably safe for use of shippers and their employees.

It is a carrier's duty to use ordinary care to deliver cars reasonably safe for use of shippers and their employees while cars are being loaded or unloaded.

2. Railroads ⬁279—Shipper's negligence in furnishing defective car to employee for loading is not intervening cause of employee's injury, so as to relieve carrier from liability.

If carrier is negligent in furnishing a defective car to shipper, and shipper in turn is negligent in furnishing it, without inspection, to his employee to be loaded, shipper's negligence is not an intervening cause of injury to shipper's employee, so as to relieve carrier from liability therefor.

*Rehearing denied Aug. 8, 1928.

3. Railroads ⬁275(4)—Carrier's liability for injuries to shipper's employee for furnishing defective cars arises out of duty imposed by law, not from privity of contract.

The liability of a carrier for injury to shipper's employees from furnishing shipper with defective cars for loading by shipper's employees does not arise out of a contract, but out of a duty imposed by law, and shipper's employee is therefore entitled to recover for injuries resulting from carrier's negligence in furnishing defective cars, though contract therefor was not made directly with shipper, but with shipper's selling agent.

4. Railroads ⬁282(9)—Whether railroad car was defective before delivery to shipper, and whether condition was discoverable by reasonable inspection, held, under evidence, for jury.

In action against railroad by shipper's employee for injuries resulting from breaking of cotter pin aiding in holding brake beam upright, which caused plaintiff to be precipitated from car being moved by him, evidence *held* sufficient to justify submission to jury of questions whether cotter pin was defective before delivery of car to shipper, and whether defective condition would have been discoverable by reasonable inspection.

5. Courts ⬁405(1)—Circuit Court of Appeals cannot consider contention that verdict is excessive, such matter being by motion for new trial.

Defendant's contention that verdict in personal injury action is excessive cannot be considered by Circuit Court of Appeals; correction of any such error being by motion for new trial in trial court.

In Error to the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Action by Willard Lafayette Ewan against the St. Louis-San Francisco Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Hale Houts, of Kansas City, Mo. (E. T. Miller, of St. Louis, Mo., and Henry S. Conrad and L. E. Durham, both of Kansas City, Mo., on the brief), for plaintiff in error.

Ira B. Burns, of Kansas City, Mo. (Paul T. White, of Kansas City, Mo., on the brief), for defendant in error.

Before STONE, Circuit Judge, and OTIS, District Judge.

OTIS, District Judge. The defendant in error, who was plaintiff below and will be referred to herein as the plaintiff, at the time of the injury on account of which this suit was brought, was employed by the Quality Coal Company, which was engaged in operating a coal mine near Arcadia, Kan. Cars for the transportation of coal mined by the plaintiff's employer were supplied by the plaintiff in error, herein referred to as the

defendant. The cars were not directly ordered from the defendant by the Quality Coal Company, but by the Mackie-Clemens Company, a selling agency for the coal company. When the coal company needed cars, it would give notice to the Mackie-Clemens Company. That company in turn would give notice to the defendant, which then would place the number of cars required on a switch track above the mine. After a car had been loaded by the employees of the coal company, one of them would climb on the front end, release the brake, permit the car to move forward by gravity to a point where it would later be picked up by the defendant, and bring it to a stop at that point by applying the brake. It was this work which the plaintiff was doing, when a cotter pin which aided in holding the brake beam upright gave way, causing the upper portion of the beam suddenly to pitch forward, and precipitating the plaintiff, then engaged in manipulating the brake, to the track. The car ran over him, crushing him so that amputation of both legs was necessary, and otherwise injuring him. The plaintiff in his petition charged that these injuries were caused by the negligence of the defendant in providing for the use of the employees of the Quality Coal Company a car in an unsafe condition, "in that the cotter key or ring at the bottom of the shaft or stem of the hand brake on said car was old, rusty, worn, broken, cracked, bent, decayed, or loose." The jury assessed plaintiff's damages at the sum of $38,250.

It is urged upon us by the defendant that the trial court erred in refusing to direct a verdict for the defendant. In support of this contention it is insisted by the defendant, first, that "even if the defendant was negligent as charged its negligence was not the proximate cause of plaintiff's injury"; second, that "there was no privity of contract either between plaintiff and defendant and plaintiff's employer and defendant, and therefore defendant owed plaintiff no duty"; and, third, that "the evidence was insufficient to show that the cotter pin was defective prior to the delivery by the defendant of the car upon the switch track in question, or that there was any such defect discoverable by proper inspection."

[1, 2] 1. Defendant's argument that it was the duty of plaintiff's employer to inspect the car in question, and that its failure so to do constituted negligence, need not here be questioned. That negligence was not an intervening cause of plaintiff's injury. It is a carrier's duty to use ordinary care to deliver cars reasonably safe for the use of shippers and their employees while the cars are being loaded or unloaded. Copeland v. Chicago, B. & Q. R. Co. (C. C. A.) 293 F. 12, 15. The employer's duty to provide for the employee a safe place in which to work may be added in the circumstances but does not supplant the carrier's duty. "The carrier cannot impose this duty to furnish cars reasonably safe on the shipper, to its own relief from liability for injuries to an employee of the shipper. If the carrier is negligent in furnishing a defective car to the shipper, and the shipper in turn is negligent in furnishing it to his employee to be loaded, the carrier and shipper are both liable to the injured employee; for the proximate cause of the injury is the defective car. But as between the carrier and the shipper the liability of the carrier is primary, for the reason that the shipper has a right to assume that cars furnished have been inspected by the carrier and found reasonably safe." Waldron v. Director General of Railroads (C. C. A.) 266 F. 196, 198.

[3] 2. The liability of the carrier does not arise out of contract but out of a duty imposed by law. Pennsylvania Railroad Co. v. Hummel (C. C. A.) 167 F. 89, 94. That duty extends, not only to the shipper, who has actually entered into contract with the carrier, but to the employee of that shipper, although, of course, there is no contract between employee and the carrier. Waldron v. Director General of Railroads, supra; Pennsylvania Railroad Co. v. Hummel (C. C. A.) 167 F. 89, 94. Nor is the duty restricted to the employees of the shipper having a contract with the carrier. As this court said in Copeland v. Chicago, B. & Q. R. Co., supra, it extends to those "who are to handle the freight in and out" of the cars. Therefore in this case it extended to the plaintiff, even although the contract with the defendant was not directly with the plaintiff's employer, but with that employer's selling agent, the Mackie-Clemens Company. The employer, the Quality Coal Company, was the shipper, and the cars were furnished by the defendant for its use. The duty of the defendant certainly extended to that company and its employees.

[4] 3. We think there was sufficient evidence to justify the submission to the jury of the question whether the cotter pin was defective prior to the delivery of the car by the defendant and whether that defective condition would have been discoverable by reasonable inspection. The accident happened a little past noon on September 17, 1924. The

exact time of the delivery of the car by the defendant does not appear from the record further than that it was not earlier than late in the afternoon of September 15th, therefore, less than 40 hours prior to the accident.

While there was no direct testimony that the cotter pin was defective as charged in the petition, and as shown by the evidence at the time of the delivery of the car, certainly the facts disclosed by the evidence were sufficient to support the conclusion, which the jury reached, that that defective condition had lasted for longer than the time intervening between the delivery of the car and the hour of the accident. Immediately after the accident several witnesses inspected the cotter key. It was found by them to be in this condition: The head of the cotter key was battered into and against the brake stem as if it had been hammered there and it was covered by old rust. The flange end of the cotter key was in this condition: Both wings were broken off flush with the stem of the brake. As to one wing, apparently it had been absent for some time. That was indicated by the fact that the break in this wing was covered with rust characterized by the witnesses as "old" rust. As to the other wing, at the point of the break in that wing it was half eaten through from rust; the remaining portion being freshly broken, as was shown by the bright spot of metal at the point of the fresh break. The testimony was that the weather during the time immediately before the accident had been bright and clear and without rain, and not, therefore, such as was calculated to quickly produce rust. The jury was certainly justified in finding that the condition which these witnesses described had existed longer than the short time which had elapsed since the delivery by the defendant of this car. Moreover, the testimony of both witnesses for the plaintiff and the defendant was to the effect that such a condition as that described could have been discovered by any reasonable inspection.

From the foregoing considerations it follows, and we hold, that the trial court did not err in refusing to direct a verdict for the defendant, nor did it err in refusing to submit to the jury the question as to whether plaintiff's employer was negligent.

[5] 4. A final contention of the defendant, that the verdict is excessive, must also be ruled against it. With that matter this court cannot concern itself. "The correction of that error, if there were any, lay with the court below upon a motion for a new trial." New York, L. Erie & W. Railroad Co. v. Winter, 143 U. S. 60, 75, 12 S. Ct. 356, 36 L. Ed. 71.

The judgment is affirmed.