George W. Pratt, J.
In February, 1960, Pacific Fruit Express Company furnished Beech-Nut Company at its San Jose, California, plant dry refrigerator car PFE 10753 with bulkhead at one end in a collapsed position. The car was transmitted to the San Jose plant over several railroads and then travelled easterly over several more railroads, finally arriving over the New York Central Railroad at the Beech-Nut plant in Rochester, March 8, 1960 where it was unloaded by Beech-Nut employees at door number 14 on March 10 and 11.
Beech-Nut employees noticed a bulkhead in one end in a tilted position with an unusual amount of breakage of baby food cartons in that area. On Friday, March 11, Beech-Nut ordered the New York Central Railroad to take the car out. The day before, Beech-Nut had ordered four empty dry refrigerator cars for filling on March 14. In order to move this car the New York Central had to switch out onto the main line and then back onto the Beech-Nut private switch. As one of those cars New York Central moved car PFE 10753 from door No. 14 to door No. 3. Beech-Nut did not notify New York Central Railroad of the tilted bulkhead or of the breakage its employees found on March 10 and 11.
Tuesday, March 15, the plaintiff and one Barton and Horton, a checker, all Beech-Nut employees, went into the car to start loading operations. They attempted to push the tilted bulkhead back into position and it would not move. The checker, a sort of subboss, left to get a truck to push it back. Horton and plaintiff then tried again to push it back and Horton pulled the lever at the top which releases the bulkhead. He heard a cracking, snapping noise and although he tried to run the bulkhead came down on both of them, causing the injuries which are the subject matter of this action. Plaintiff Salerno had little recollection of what happened. Barton and Horton differed as to what was said when Horton left to get the truck to push it.
Later inspection showed that the hangar bar broke. This hangar bar was the only support for the bulkhead when it was disengaged from a locked position. Plaintiff produced testimony tending to show the hangar bar had been previously repaired by welding or heating. The defendant, Pacific Express, produced testimony from which the jury could have found that the metal bar may have been heated and straightened but not welded. Two Beech-Nut employees who had had some experience with welded materials and who inspected the broken bar testified that a portion of the break was a new break and remaining portion appeared to be an old crack. There was some testimony that the bar had a flaw at the point of breakage.
*788 A New York Central defense witness, Rizzo, with 22 years experience in welding, testified that the center area was an old break and the right and center a new break, that it was discolored and showed previous break and welding. He was testifying entirely from photographs. He said the area was discolored that even though galvanized, if darkened as much as the photograph showed it would crystallize; that the heat would tend to take the zinc and lead from the metal and cause the discoloration.
Pacific Fruit Company defense witness Earl V. Hopkins with studies and experience in welding design and stresses and who was in charge of the design group that manufactured the car in question also testifying from photographs, gave his opinion that it was not welded; that the fact that the galvanized part was burned would indicate that someone had tried to straighten the bar; that there was no indication of overheating and that normal heating would not hurt the metal in any way. That the dark spot could be a flaw in the metal and, if so, the flaw would weaken it and that the flaw would not be visible to inspection until the bar was broken.
The defendant New York Central did not examine the inside of the car. Such inspection as it made was from the outside with the car door closed. All of these matters were presented to the jury as questions of fact and resolved by them in their verdicts.
The court reserved decision on all motions to dismiss at the end of the plaintiff’s case and of the whole case, and for a directed verdict and this matter now comes up for determination of those motions and also to determine motions made by the various defendants after the verdict, to set aside the verdict on appropriate grounds set forth in section 549 of the Civil Practice Act. All motions made at the end of plaintiff’s case and at the end of the whole case and for dismissal of the complaint and for directed verdict are here denied with appropriate exceptions.
The case was submitted to the jury for general verdicts against defendants New York Central Railroad Company and Pacific Fruit Express Company and in the third-party action brought by Pacific Fruit Express Company against Beech-Nut Life Savers, Inc. Special findings were submitted to the jury by the court. The jury found general verdicts against New York Central and Pacific Fruit Express in the sum of $13,270.35 and in the special findings found Beech-Nut Life Savers guilty of active negligence which was a proximate cause of the accident; that the defendant Pacific Fruit Express Company was *789 not guilty of active negligence contributing to the accident but was guilty of passive negligence based upon an act of omission of Beech-Nut Life Savers; and pursuant to instructions in the special findings thereupon awarded a verdict of $13,270.35 over in favor of Pacific Fruit Express against Beech-Nut Life Savers, Inc.
The defense of the New York Central Railroad was that the plaintiff was guilty of contributory negligence and that its duty was merely that of inspecting the exterior of the car before delivery and under no duty to inspect the interior of the car. The defense of the Pacific Fruit Express also was that of contributory negligence of the plaintiff and in addition that they had no responsibility after the delivery of the car but that terminal carriers had the absolute duty of inspection. In this instance terminal carrier would be the New York Central Railroad. The Beech-Nut Company for its defense in Pacific Fruit Express Company’s third-party action for its defense claimed that failure of inspection on the part of the third-party defendant was not a proper issue in plaintiff’s action. About this latter defense there can be no doubt. But Beech-Nut also claimed that the third-party plaintiff as owner of the car was primarily responsible for the inspection thereof and therefore there could be no active negligence on itself as a third-party defendant but for which it might be passively liable.
The defendant Pacific Fruit Express Company was under an obligation to use what in a number of Federal cases cited by the various parties is called ordinary care. The court here holds that in New York State such ordinary care is the same care which a reasonably prudent person or company would use under the same circumstances to deliver to the carrier, whether directly or through other railroad channels over which the ear may pass, a refrigerator car which was reasonably safe for loading and unloading.
The defendant New York Central Railroad Company in its brief urges that no evidence was presented to show what ordinary reasonable inspection under the circumstances should be and that there was no proof that the New York Central Railroad in any way violated any standard of conduct in not inspecting the car before reloading it. All this was clearly defined in the court’s charge to the jury as follows: “ The defendant Railroad Company as a common carrier is under an obligation to use ordinary care to deliver to the shipper, Beech-Nut, cars which are reasonably safe for loading and unloading. The Railroad must make reasonable inspections of the cars furnished and to warn of or repair defects thus found. Beech-Nut as *790 shipper-employer’s duty to provide a safe place for employee’s to work does not supplant the common carrier Railroad’s duty. Whatever, in this case, the employer Beech-Nut may have done, or failed to do, either to correct the tilted bulkhead when its employees found it when unloading the car, or in failing to notify the New York Central Railroad thereof, is not chargeable to this plaintiff and does not relieve the Railroad from using such reasonably ordinary care as you find a reasonably prudent Railroad or its employees should have used under all the circumstances you find to be the facts in this case.
‘ ‘ The defendant Pacific Fruit Express Company is also under an obligation to use ordinary care to deliver to the carrier, whether directly or thru other Railroad channels over which the car may pass, refrigerator cars which are reasonably safe for loading and unloading. The plaintiff claims the anchor or lift or lock bar or handle was defectively welded; the defendant Pacific insists it was not, but that heat had been applied to the zinc coating which may have given it the appearance of a weld and claims the break was caused by defective manufacturing which inspection could not have disclosed. It is undisputed, that whatever the cause, it didn’t work properly just before the accident. You are to decide whether the defendant Pacific Company used the ordinary care which a prudent person, or company, should use under all the circumstances which you find to be the facts in this case. Did it put into circulation a car which was not reasonably free from discoverable defects and which it knew would be used from time to time by men engaged in loading and unloading?
“ Did the breaking of the bar cause the accident? Would inspection by the defendant Pacific Company have revealed it was or might be dangerous and if it did, was the Pacific Company under the ordinary care rule I have given you charged with the duty of making further tests? In determining what they should have done in using ordinary care; you are the sole judge of the facts.”
As to Pacific’s defense, from all testimony it is obvious that the bar which has been variously called the lifter bar and hangar bar and which we shall here call the hangar bar was somehow defective and broke. This bar locked the bulkhead into position and the jury could well have found that this defective bar was a proximate cause of the accident and that proper inspection before leaving Pacific’s possession on the part of the Pacific Fruit Express would have disclosed this defect or at least put it on warning that it should have tested the bar to *791 determine whether it was still adequately strong enough for the purposes intended.
The fact that the Pacific Fruit Express Company was out of possession and control of the car for a considerable period of time does not relieve it of liability. (Albanese v. Southern Ry. Co., 131 F. Supp. 307.)
Proof here created a reasonable inference for the jury to find that the hangar bar was defective upon delivery to BeechNut in California and that Pacific was therefore negligent in failing to inspect before delivery to the carrier.
As to the defense of New York Central that it had no duty to inspect except the exterior of the car, the jury may well have found, that since the car, having been released back to the New York Central Railroad and in the switching process was taken by it from the loading siding of the Beech-Nut people onto the main tracks of the Central in order to properly switch it back to the new loading platform position on the Beech-Nut siding, a reasonably prudent railroad man or company would have slid the door open and at least from the outside looked the interior of the car over; and that even the most casual inspection from the outside should have revealed the tilted bulkhead and put the New York Central Railroad on warning that further inspection or tests were necessary to determine the cause of the tilting; and that this failure to inspect was a proximate cause of the accident, this in spite of the fact it was Beech-Nut employees who closed the door; and in spite of the fact other Beech-Nut employees discovered the tilted bulkhead when unloading the car and failed to report it to the railroad company.
It is the duty of a railroad carrier to inspect a car prior to its delivery to a shipper and to thereby ascertain that the car is in a reasonably safe condition for loading. While it is the employer Beech-Nut’s duty to provide its employee, the plaintiff, a safe place in which to work, that would not supplant the New York Central Railroad Company’s duty and even though the shipper may have been liable as between carrier and shipper, the liability of the carrier to shipper’s employees is primary for the reason that the shipper has a right to assume that cars furnished have been inspected by the carrier and found reasonably safe. (Chicago, Rock Is. & Pacific R. R. Co. v. Williams, 245 F. 2d 397; St. Louis-San Francisco Ry. Co. v. Ewan, 26 F. 2d 619 [C. C. A. 8th]; Markley v. Kansas City So. Ry. Co., 338 Mo. 436; Sykes v. St. Louis San Francisco R. R. Co., 178 Mo. 693; Settle v. Baldwin, 355 Mo. 336; 9 Am. Jur., Carriers, p. 634.)
*792 It was left to the jury to say what the standard of conduct should have been, viz., what would a reasonably prudent railroad employee or railroad have done under the same circumstances.
As to Beech-Nut’s liability, the jury was amply justified in finding that Beech-Nut owed a duty not only to warn its employees but to report the tilted bulkhead and the difficulty its employees were having in restoring it to a proper upright position. There remains, therefore, only the question of contributory negligence.
It is true, as stated in one brief, that “ one may not, even under an order issued by another, act with reckless disregard of his own safety.” (Boerio v. Haiss Motor Trucking Co., 7 A D 2d 228, 232-233.)
But it is also true as stated in another brief, quoting from Utica Mut. Ins. Co. v. Amsterdam Color Works (284 App. Div. 376, 379, affd. 308 N. Y. 816): “In general, what constitutes knowledge and appreciation of the danger is a question of fact. Obviously, however, where the plaintiff exposes himself to some known danger there can be no question. In such a case he must then use ordinary care to avoid being injured. And he may be held not to have used ordinary care if he exposes himself to a known danger.”
The plaintiff, Salerno, had never been in a refrigerator car before. He had received no instructions regarding it. His fellow workman, Barton, testified he never saw the inside of a refrigerator car. Although on the examination before trial the subboss checker, Horton, who was in charge of loading, testified he told them to leave the bulkhead alone; and he would go out and get a load of baby food on his truck and push it against the bulkhead, on the trial he testified that all three had tried to move the bulkhead; that he told them to wait a minute and he would get such a truck. This left a clear question of fact for the jury to determine as to whether the plaintiff knew or by this was sufficiently warned of danger and also as to whether such danger was obvious. By its verdict the jury resolved this question in plaintiff’s favor.
As to the Pacific’s claim in the third-party action that BeechNut was guilty of active negligence, the proof showed Beech-Nut employees not only discovered the tilted bulkhead and found a number of cartons of baby food broken next to the bulkhead but that Beech-Nut failed to notify the. carrier New York Central Railroad thereof and gave the plaintiff no warning of any special care to be exercised. From this proof the jury could well have found improper supervision and failure to provide a *793 safe place to work. This is active negligence. (McFall v. Compagnie Maritime Belge, 304 N. Y. 314.)
The motions to set aside the verdict and for a new trial are also here denied with appropriate exceptions to each defendant in each motion.
Judgment for the plaintiff in the amount of $13,270.35 awarded by the jury may be entered against Pacific and New York Central and in the same amount in favor of Pacific against Beech-Nut on the third-party action.