JUSKO, APPELLEE, *v.* THE YOUNGSTOWN & NORTHERN RD. CO., APPELLANT.

(No. 3393—Decided January 18, 1951.)

*Mr. W. E. Stankiewicz* and *Mr. Clinton J. Wall,* for appellee.

*Messrs. Manchester, Bennett, Powers & Ullman* and *Mr. John H. Ranz,* for appellant.

GRIFFITH, J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Mahoning County in an action wherein John Jusko, the appellee, was plaintiff, and the appellent, The Youngstown & Northern Railroad Company, was defendant.

At the conclusion of all the evidence defendant's motion for a directed verdict was overruled. The jury returned a verdict in favor of plaintiff in the sum of $15,000. A motion for judgment *non obstante veredicto* was overruled, after which judgment was entered on the verdict. Defendant's motion for new trial was overruled, and this appeal on questions of law was perfected.

The first question presented is whether the defendant was entitled as a matter of law to a judgment upon the evidence.

As revealed by the record, the following are the material facts:

Plaintiff was employed at the Ohio Works Plant of the Carnegie-Illinois Steel Corporation at Youngstown. From the yards of the defendant a spur known as the "ash track" leads into the Ohio Works Plant, which spur is on the property of, and belongs to, the steel company. This track adjoins a conveyor which is used for loading cars with refuse from the plant. The conveyor consists of a belt moving over rollers from the ground level upwards at a 45 degree angle to about two feet above the top of an average hopper freight car. On October 20, 1947, the defendant, at the instance of the steel company, spotted some empty freight cars on this spur, for the purpose of being loaded. It was plaintiff's duty to load the cars by means of the conveyor and to keep the conveyor in running order. When one end of a car was filled to a heap and another portion was empty it was necessary for plaintiff to move the car, by use of a pinch bar, to a point where the conveyor could load the empty portion. At about 11:40 p. m. on October 20, the plaintiff noticed that a wire was entangled in the belt of the conveyor, which wire was impeding the normal operation of the conveyor. For the purpose of removing the wire and to see whether that portion of the car was sufficiently filled to require its movement, plaintiff climbed to the top of the car. He then removed the wire from the conveyor, observed the extent of the fill at the end of the car, and thereupon proceeded to descend to the ground. The car was equipped with "grab irons" or an iron ladder at its end, which was in safe and proper condition. Plaintiff had climbed to the top of the car by use of this ladder.

Just what happened leading to his injury that night is revealed by his own testimony, which, in part, is as follows:

"As I was going down I put my foot down and did not know what it was on, but as I was getting ready to put my other leg I took a look and I see my right foot was on this pin, so I tested it like, and it seemed to hold my weight, and that is when I let the other foot go, and that's when I went down.

"Q. How did you get off this car? A. I am standing on the top of the car and I swung my left foot out and I feel I got hand rods, and I held myself and put right leg out and step by step climbed down.

"Q. Over the end of the car? A. Yes.

"Q. And as you reached about where the platform is what happened? A. I stepped with the right leg and I feel that I got on something under my foot.

"The Court:

"Q. Indicating something that was shaking? A. I feel it like this, and I was standing on it and then with my left leg and put my—loose my hand and put my whole weight and it threw me down just like this, and that's all I know.

"Q. Did you intend to go down from the car by stepping on the coupling? A. No I never thought of anything like that. I have known of injuries and accidents happening but I never thought of stepping off the car that way.

"Q. How did you get off the car? A. I would go to one end or the other end of the car and go down the steps and load the car.

"Q. Why didn't you move your foot from the pin back on the platform? A. Because other times I had occasion when I am climbing over these cars where I was standing on the pin and nothing would happen to me."

It is unnecessary to quote further the details of the record. It is sufficient to say that it appears that the plaintiff, while in the performance of his duty as an

employee of the steel company, was going down the ladder backwards, *i. e.*, he was on the iron ladder in the act of descending and was facing the car. When he reached a certain point there was a platform about six inches in width running across the full end of the car. However, plaintiff did not use the platform or the remaining steps of the ladder, but put his right foot on the upper end of a coupling pin, which was up, tested it, and then put his entire weight on the pin and was thrown to the ground.

Plaintiff, in going down, decided to and did test the coupling pin as a step. It seemed to hold his weight, and that is when he took his left foot off the rung of the ladder and fell.

The question whether there was something defective in the working apparatus of this coupler was submitted to the jury. There was plenty of light at that end of the car that night so plaintiff could see the coupling pin. He saw it and he knew what it was that he had his right foot on. He stated he did, and it seemed to hold him. He knew of injuries and accidents having happened before, but he voluntarily stepped on the pin instead of using the ordinary means provided for getting off the car.

This case was tried upon common-law principles as to liability. The defendant owed the duty of ordinary care, *i. e.*, the duty of reasonable inspection to determine whether the car might safely be loaded and to give warning of any defective condition of the car, which the defendant could readily discover by such an inspection. The defendant, in delivering this empty car on the spur track for loading purposes, whether it was a gondola, hopper, or dump car, or whether it belonged to the defendant or to some other railroad company, or to the steel company, owed to the employees of the steel company the duty of seeing

that the car was in a reasonably safe condition for loading, which duty required the defendant to make an inspection of the car sufficient to discover a patent defect. *Spears* v. *New York Central Rd. Co.*, 61 Ohio App., 404, 22 N. E. (2d), 634.

The inspection requisite was a reasonable inspection. The conductor of the defendant placed this car on the siding that afternoon, checked it to see that it had no bad order card on it, and spotted it at the place of the accident. If the coupling pin condition was a latent defect, the defendant could not be charged.

A carrier inspecting a car for the purpose of determining whether it is reasonably safe for loading is required to inspect only those parts which in the ordinary course of things will be used for the loading. With reference to the car in question the defendant was required to inspect the "grab irons" or ladder, the stepping platform at the end, and perhaps the side walls and floor of the car, but the coupler, used only for the operation of the car in movement, had nothing whatsoever to do with the loading of a car. The defendant owed no duty to plaintiff to keep this coupler in a safe condition for a stepping off platform, because automatic couplers and coupling pins were not intended as a means by which persons may get on and off freight cars. Plaintiff was a car loader and not, in any wise, a car operator.

It clearly appears from the record that the railroad car was properly equipped with safe "grab irons" or a ladder; that plaintiff used this ladder, a safe course, in ascending to the top of the car; and that in getting down he attempted to try the coupler pin, knowing that accidents had happened before in taking such a course. In other words, he left a safe path provided on the car and risked a known dangerous way, resulting in serious injury. Clearly, plaintiff departed

from the standard of reasonable conduct in leaving a safe means for getting off the car and using a known dangerous course. He unnecessarily chose a hazardous course over a safe one.

The following statement in the opinion in *New York Central Rd. Co.* v. *Stevens, Admr.,* 126 Ohio St., 395, 408, 185 N. E., 542, 87 A. L. R., 884, is significant:

"It is apparent that he left a place of safety and stepped into the zone of danger. We cannot escape the conclusion that this action on the part of Stevens constituted negligence which proximately contributed to his injury and prevents his recovery. The facts, as shown by the plaintiff's own testimony as to how the accident happened, will warrant no inference, in our judgment, that the plaintiff at the time of the injury was exercising due care for his own safety.

"The Court of Common Pleas should have directed a verdict for the railroad company, and the Court of Appeals should have so ordered."

Plaintiff's contention is that the coupling pin was in a dangerous, defective, and unsafe condition; and that by reason thereof he suffered serious injuries. In support of this, plaintiff called a Mr. Stockley, who had been a railroad car repair man and inspector and who testified, in effect, that when the coupling is closed the pin should be down, and that, if a coupling apparatus is closed and the pin sticks up, there is some defect in the coupling apparatus.

On the other hand the defendant called an expert witness who thought that when the coupler is closed the coupling pin may be either up or down, and whether it is up or down is not indicative that the car is in bad order or defective. The conflicting testimony with respect to this issue presented a factual question for the jury.

Where, however, in a case such as the instant one,

all the evidence produced at the trial by both parties presents no factual issue as to the negligence of the plaintiff, but, on the contrary, requires the legal conclusion that his negligence was a contributing proximate cause of his injuries, the negligence of the defendant becomes an immaterial issue, since any negligence of the plaintiff which proximately contributed to his injuries prevents recovery by him and requires an instructed verdict for the defendant.

The inescapable conclusion is that the negligence of the plaintiff proximately contributed to his injury and prevents his recovery. This court is of the opinion that reasonable minds could conclude only that the plaintiff was guilty of negligence which proximately contributed to his own injuries. His own testimony shows a want of care on his part.

Where the Court of Appeals reverses a judgment of the trial court for the assigned reason that the trial court erred in not sustaining the motion of defendant for a directed verdict made at the close of all the evidence, it becomes the duty of the Court of Appeals to render the judgment which the trial court should have rendered, and not to remand the cause to the trial court for further proceedings. *Majoros* v. *Cleveland Interurban Rd. Co.*, 127 Ohio St., 255, 187 N. E., 857.

Accordingly, the judgment is reversed, and final judgment rendered for the defendant.

*Judgment reversed.*

Phillips, P. J., and Nichols, J., concur in the opinion and judgment.