[Civ. No. 17298. First Dist., Div. One. July 12, 1957.]

EDWIN J. FERNQUIST, Respondent, v. SAN FRANCISCO PRESBYTERY (a Nonprofit Corporation), Appellant.

Barfield & Barfield for Appellant.

William E. Ferriter and John M. Quinn for Respondent.

WOOD (Fred B.), J.—Plaintiff recovered judgment for $8,000 for personal injuries sustained while working on a dormitory building being erected on land of the defendant Presbytery of San Francisco, a religious corporation. The defendant maintains the land and the buildings on it as conference grounds, especially for persons of high school age during summer months and for varied church activities on week-ends during the rest of the year. It is for the use of the entire presbytery, including its constituent churches and their individual members.

Defendant's board of directors created a Conference Grounds Committee. A member of that committee, Rev. Fred B. Trevitt, testified that he was in charge of the construction on the grounds, including the dormitory where plaintiff was injured.

The defendant committee requested the various Presbyterian churches in the area, including that to which plaintiff belonged, to ask their parishioners for volunteer help in the work of construction, and to do so without compensation.

For some of the buildings the services of a contractor had been retained, but not for the dormitories, including the dormitory where plaintiff was injured. For these buildings a voluntary architect submitted plans which the committee adapted to its financial ability. They had a Mr. Bertaud, a carpenter out of work at the time, not a general contractor, to supervise the building of these dormitories. He acted in the capacity of a superintendent to direct the men what to do when they arrived. He was there to be sure that they put the structures up correctly. "So much of our help didn't know." He was given power to tell these men

how to do the work. The witness anticipated they might get some unskilled labor on this job. Bertaud was instructed to more or less tutor or supervise this unskilled labor. It would have been either Mr. Bertaud or a Mr. Patton, resident manager, who gave the instructions to the members of plaintiff's party.

Plaintiff, a carpenter of more than 30 years' experience, is a member of one of defendant's constituent churches. Responding to an announcement by the defendant through his minister, he volunteered to work on this project.

One of plaintiff's fellow church members conveyed plaintiff and three other members (Messrs. Rennison, Neubaure and Collins) to the job and introduced them to the man in charge. This man told them what to do. He directed them to one of the dormitories and to a group of rafters and a ridge board (all cut and ready to go into place) and told them: "The thing to do next is to get these rafters into place, and some of you can go aloft and commence placing them, and others can pass them up."

Plaintiff and Rennison (a carpenter by trade) proceeded to lay and nail 2-inch by 12-inch planks lengthwise of the building on top of the centers of the first floor ceiling joists. This center board was designed to serve as a temporary support for the rafters and for plaintiff and Rennison to stand upon while putting the rafters in place. Next plaintiff and Rennison cut off some overhanging branches of a tree.

Meanwhile, Collins and Neubaure* began taking the rafters up and laying them across the center-board and the top plates of the side walls of the building. Plaintiff had nothing to do with this phase of the work. He gave no instructions to Collins or Neubaure. He had no authority to instruct anyone. He observed no one supervising Collins and Neubaure while they were doing this work.

After the tree-trimming, plaintiff walked toward the end of the building where Collins and Neubaure had commenced their work, to start putting the rafters into place. At first he walked on the 2-inch by 4-inch top plate. Then, reaching a group of rafters, he walked on them for about 10 feet, when they gave way and he fell through to the floor below. He stepped on those rafters because they were solid together. They were laid flat; four or five piled on top of each other in a row. The rafters piled up there seemed a

---

*Plaintiff said that Collins was a cable-splicer for the telephone company. He did not know Neubaure's occupation.

much more solid support than the 2-inch by 4-inch plate he had been walking on. It seemed a solid path for him to follow to get where he wanted to be. As he walked along until he reached the point where he fell through, none of the rafters turned. It was solid. He was watching where he was going. He always watches his feet when walking on top of a building. Many hundreds of times he has done the same thing. He was long experienced in this type of construction.

In support of its appeal the defendant claims (1) the evidence does not support the verdict and (2) the court committed prejudicial error in the giving and refusing of instructions.

■ Defendant's first claim is that the evidence demonstrates, as a matter of law, that plaintiff was a licensee, not an invitee, and that defendant violated no duty it owed to plaintiff as a mere licensee. We do not so view it. The evidence warrants implied findings that plaintiff was there at the invitation of the defendant to aid it in fulfilling one of the defendant's corporate purposes and functions and, therefore, that defendant owed him a duty to exercise ordinary care to keep the premises in a reasonably safe condition or to warn him of danger.

This is like the case of the actress-dancer in *Edwards* v. *Hollywood Canteen*, 27 Cal.2d 802 [167 P.2d 729], who was injured while performing volunteer work as a hostess, dancing with a boisterous marine. The court deemed her an invitee: "It appears that plaintiff was on defendant's premises at the request or invitation of defendant for the purpose of aiding it in the promotion of its objective of providing gratuitous entertainment for members of the armed forces. Thus while plaintiff was invited on the premises for what might be viewed in the nature of a social affair, the entertainment carried on was part of defendant's corporate function and plaintiff was present to aid in fulfillment of that function, and it is therefore quite clear that defendant received a benefit from the presence of plaintiff." (Pp. 808-809.)

Upon the point that the benefit need not be measured in monetary terms, the court cited *Davis* v. *Central Congregational Soc.*, 129 Mass. 367 [37 Am.Rep. 368], the case of a person injured upon a path in the church grounds after attending a church conference. Of similar import is *Weigel* v. *Reintjes* (Mo.App., 1941), 154 S.W.2d 412, the case of a worshipper who was hurt by falling into a drainage ditch

in the churchyard before services. (See also Prosser, *Business Visitors and Invitees*, 26 Minn.L.Rev. 573, 594-595; James, *Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees*, 63 Yale L. J. 605, 616-619.) Surely, a church member who is urged and requested to and does contribute his labor and his skill to the construction and improvement of the property of his church should not be in a worse position than a communicant who goes to church to attend a worship service.

Defendant's contention seems to be that this was a joint venture and that there is no such duty of care owing from one joint venturer to another joint venturer. Whether they were joint venturers or not seems beside the point. ▮ In a controversy between joint venturers the doctrine of imputed negligence from the one to the other does not obtain. (*Roberts* v. *Craig*, 124 Cal.App.2d 202, 208-210 [268 P.2d 500, 43 A.L.R.2d 1146].) The important question is: Which one of them was in control or were both in control? (*Walker* v. *Adamson*, 9 Cal.2d 287, 290 [70 P.2d 914].) Here, the evidence supports an implied finding that the defendant, not the plaintiff, had control over the placing of the rafters across the center-board and the top plate, in readiness for use by plaintiff and Rennison.

Defendant's chief reliance is upon *Coleman* v. *California Y. Meeting, etc. Church*, 27 Cal.App.2d 579 [81 P.2d 469]. The court in that case did speak of a joint enterprise and said that this relationship, "coupled with the circumstances surrounding the accident," rendered the court "unable to perceive the existence of any duty reposing upon respondent the violation of which resulted in injury to appellant." (P. 582.) We are not told in detail what those "circumstances" were. It would seem reasonable to infer that they showed that the plaintiff was sufficiently in control of the situation or aware of the risk to be responsible or to share responsibility for the accident.

Defendant relies to some extent upon *Ashley* v. *Jones*, 126 Cal.App.2d 328 [271 P.2d 918]. That also is not a helpful case. The court apparently rested its decision upon two grounds: One, that the plaintiff was a licensee because injured on a social visit at the home of the defendants; the other, that there was insufficient evidence of a failure to exercise the requisite degree of care even if the plaintiff had been an invitee. Those facts do not make it analogous to our case.

■ The evidence that plaintiff had nothing to do with the placing of the rafters and that any instructions in respect thereto were given by defendant's agent or representative, whom defendant had put in charge for the purpose of tutoring inexperienced workmen and of supervising the work, would warrant a finding that defendant was negligent either in not properly instructing Neubaure and Collins or that Neubaure and Collins negligently failed to observe instructions given.

■ Nor can it be said, as a matter of law, that plaintiff was contributorially negligent. Defendant's argument seems to be that Neubaure and Collins were not carpenters, that plaintiff knew or had reason to believe that they were not, and must have known they were inexperienced in this kind of work. It follows, they say, that he should not have assumed that the rafters were properly piled. That, we think, presented questions of fact for decision by the trier of the fact. Especially in view of plaintiff's testimony that when piled these rafters gave the appearance of firmness and security and that he had hundreds of times walked across piles of rafters similarly laid. Also, it was defendant, not plaintiff, who was peculiarly aware of the fact that there were inexperienced workmen among the volunteers and assumed a degree of responsibility for their work by appointing a builder to tutor and supervise them. ■ Normally, the question whether a danger is obvious and should have been appreciated is one of fact, not of law. (See *Toschi* v. *Christian*, 24 Cal.2d 354, 360 [149 P.2d 848] ; *Calame* v. *Stevens*, 110 Cal.App.2d 45, 47 [242 P.2d 109].) This is such a case.

Defendant complains that the court gave the jury certain general instructions before any evidence was taken but admits that full instructions were given at the end of the trial and concedes that prejudice will not be predicated thereon.

The trial court properly rejected defendant's proposed instruction that plaintiff was a mere licensee. It would have been error to give it, as we have seen. For the same reason, it was proper for the court to advise the jury of the rights of invitees as well as those of licensees.

■ Defendant complains of an instruction that "should a licensor learn that a licensee is in a dangerous condition, the former is bound to exercise ordinary care to avoid injuring the latter." The defendant does not contend that this is an erroneous statement of the law, but that there "was no evidence in the case on to which the qualification

could latch." The defendant forgets that the two men who had placed the rafters were in a position to observe the plaintiff walking across the boards. There was opportunity for them to warn him of any danger that they had created, since he proceeded about ten feet across the boards before he fell. These men were acting as agents of the defendant even though their services were performed gratuitously and both their knowledge and negligence can be imputed to their principal. (See *Malloy* v. *Fong*, 37 Cal.2d 356 [232 P.2d 241].)

Two of defendant's requested instructions on contributory negligence were rejected but we find that this subject was fully and appropriately covered by instructions that were given.

■ Defendant complains also of what the court said on this subject in its preliminary instructions. After defining plaintiff's burden of proof, the court said: "Now, with the question of contributory negligence, we say the burden shifts. In other words, if the plaintiff has proved his case that there was negligence, then if the defendant claims contributory negligence, the burden shifts to the defendant and he then has to prove that the plaintiff was guilty of some negligence that contributed to the accident, . . ." Defendant objects to the use of the word "shifts" because plaintiff's burden on the issues he must prove continues throughout the trial. It also complains that the preliminary instructions ignored proximate cause and active and passive negligence. Even though the instruction was theoretically wrong, if the jury was at all influenced by it, the instructions at the close of the case would have cured any difficulties that arose in the minds of the jury. They were instructed that the plaintiff had the burden of proof on all the allegations in his complaint both on the issue of negligence and of proximate cause. They were also instructed that plaintiff could not recover if his own negligence proximately contributed to the result, and that the burden of proof on the issue of contributory negligence was on the defendant. These were full and correct instructions.

It is difficult to see how instructions about the "shifting" of burdens could be prejudicial in this case. If the jury is not confronted with this concept, it might determine either the question of negligence or of contributory negligence first. If the instructions are framed in terms of "shifting burdens," this suggests that logically the first question to be determined is that of defendant's negligence. It would be highly specu-

lative to assume that the jury's verdict will be much different when they are instructed to determine the question of negligence first than when they are given the option of solving either question first. In some circumstances, prejudice might result because the jury might be misled to think that the court was speaking of the same burden in each instance. Thus the jury might believe that once the plaintiff established a prima facie case of negligence, the burden was on the defendant to prove an absence of negligence. But in the preliminary instructions given here, it is apparent that the court was talking of the burden of proof on two different issues.

Finally, defendant asserts error in the rejection of its instruction on assumption of risk but the substance of that instruction was covered by instructions that were given.

The judgment and the order denying the motion for judgment notwithstanding the verdict are affirmed.

Peters, P. J., and Bray, J., concurred.