Blasi *v.* Bonnert et ux., Appellants.

Argued March 3, 1958. Before RHODES, P. J., WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT and GUNTHER, JJ., absent).

Before EAGEN, J.

*Eugene Nogi,* with him *Nogi, O'Malley and Harris,* for appellants.

*Joseph E. Gallagher,* with him *J. Leonard Langan, Carlon M. O'Malley,* and *O'Malley, Morgan, Bour & Gallagher,* for appellees.

OPINION BY RHODES, P. J., June 11, 1958:

Defendants, Herman J. Bonnert and May A. Bonnert, appeal from judgments entered upon a verdict against them in a trespass action for personal injuries after refusal of their motion for judgment notwithstanding the verdict.

The evidence viewed in a light most favorable to plaintiffs, with all reasonable inferences therefrom, establishes the following facts. On the evening of June 6, 1955, about 8:30 p.m., the plaintiffs, Vito Blasi and Daniel Conte, together with three other members of a

committee representing a playground association in Pittston, visited the business establishment of defendants at 402-404 Cedar Avenue, in the City of Scranton, for the purpose of purchasing certain novelties and prizes. They transacted business with the defendant Herman J. Bonnert in a basement room of the premises. After making purchases, they were invited by this defendant to go to the next floor to look over displays of certain other materials which he believed might be of interest to the committee. He directed the customers to proceed to the main floor by way of an outside entrance while he remained to turn out the light and lock the basement door. They proceeded up an outside stairway and onto an open porch on the level of the next story where they waited for Bonnert to arrive to open the door. They stood there about three minutes when, without warning, the porch cracked and fell. They were thrown to the ground which was nine to fifteen feet below. Plaintiffs were thereby injured, and brought this trespass action.

The collapse of the porch was due to the failure of wooden cross beams because of dry rot at points of support. The porch was approximately fifteen feet in length and extended from the building about five feet. It was constructed of wood and consisted of flooring over a "boxed-in" frame made of 2 by 6 inch, 2 by 4 inch, and 2 by 8 inch beams.[1] Each outside corner of the porch was supported by an upright three-inch pipe serving as a pillar from the ground. A beam of the frame, which was 2 by 6 inches, ran lengthwise from one pipe to the other, and at each end it formed a mitered corner with a beam extending to the building. The mitered corners rested directly on the upright

---

[1] The testimony as to the thickness of the beams is conflicting.

pipes; there were no metal plates on top of the pipes. A facing 1 by 6 inches covered the frame on the outside. An examination of the porch after its collapse indicated that the 2 by 8 inch beams were rotted at the corners supported by the iron pipes, and that they had severed because of the rot. Pieces of the 2 by 8 inch beams, rotted half way through, remained on top of the pipes at both corners; they were plainly seen from the ground after the accident. The under frame of the porch was exposed and visible from below. It seems that the rotted portions may not have been visible prior to the accident because of the facing around the outside of the porch frame.

While an owner or possessor of land is not an insurer, he owes to a business visitor or invitee the duty of reasonable care for the latter's protection and safety. It is his duty to keep the premises in a reasonably safe condition and, if there are any defects known or discoverable by the exercise of reasonable care and diligence, to warn the business visitor or invitee of the defects or danger. But the owner or possessor is not liable for a latent defect of which he is ignorant and which could not be discovered in the exercise of reasonable care and diligence. *Miller v. Hickey*, 368 Pa. 317, 324, 81 A. 2d 910. An important factor in this case is whether the defect would have been discovered if defendants had exercised reasonable care and diligence.

In determining whether the verdict of the jury in favor of the plaintiffs is based upon the evidence of record, we are required to consider not only the evidence presented by plaintiffs but also that presented by defendants which in fact and by inference would support the verdict. *Cherry v. Mitosky*, 353 Pa. 401, 407, 45 A. 2d 23. Defendants' evidence indicated that they had owned the property for approximately seven

years prior to the accident, and that the porch was used in connection with the business "15 to 20 times a day." It is also utilized by a tenant in the building who testified that she goes out on the porch several times during the day in the course of her housework. Although defendant Herman J. Bonnert testified that he had occasion to be under the porch to dispose of garbage at least once a week, and that on those occasions he observed nothing wrong with the beams under the porch, he admitted that he had never checked the porch to ascertain its condition, and that no one had ever made an actual inspection. It is significant that the porch was open and had been exposed to the elements for years.

Whether a defendant's conduct or failure to act meets the standard of reasonable care and diligence is normally a matter for the jury to determine unless the evidence clearly establishes as a matter of law that he is not chargeable with fault. See *Wilbert v. Pittsburgh Consolidation Coal Company,* 385 Pa. 149, 154, 122 A. 2d 406; *First National Bank of McKeesport v. Simko,* 384 Pa. 603, 605, 122 A. 2d 47. In this case we are of the opinion that the issue was for the jury. From all the evidence and inferences from the circumstances, it was permissible for the jury to conclude that defendants had not fulfilled their duty of maintaining the premises in a reasonably safe condition for the protection and safety of business visitors and invitees. The verdict establishes that the jury believed that to maintain these premises in a reasonably safe condition for the purposes for which they were used required defendants to make reasonable and proper inspections, and that such inspections would have disclosed the hazardous condition. Except for an occasional glance at the underside of the porch while disposing of garbage, defendants made no inspection of

its condition. It was for the jury to determine whether this was the care which a reasonable and prudent person would have given to the premises under the circumstances.

Defendants present the argument that because the defect was latent and not visible they had no duty to inspect. This ignores the fact that defendants' own evidence clearly established what a reasonable inspection would have been as well as the fact that they made no inspection calculated to disclose defects in the seven years of their occupancy. A witness for defendants who had examined the porch after the collapse testified on cross-examination as follows: "Q. And another accepted way of making an inspection to see if a structure of that type is being supported properly and if it is in good shape, would be to use a hammer—A. Yes, sir. Q. —for sounding. That is an accepted procedure in the carpentry trade? A. Right. Q. And when you use the hammer, the hollow sound that you get from rotten timber will be detected— A. That's right. Q. —as against solid? A. Right." It is true that the owner of premises is not required to tear out portions of his structure merely to inspect them where he has no reason to believe that they may be defective. See *Coradi v. Sterling Oil Company,* 378 Pa. 68, 70, 71, 105 A. 2d 98; *Miller v. Hickey,* supra, 368 Pa. 317, 81 A. 2d 910; *Bechtel v. Franklin Trust Company,* 120 Pa. Superior Ct. 587, 591, 182 A. 800. But the duty of reasonable care and diligence may in certain circumstances impose something more than a mere cursory observation. It is clear that land owners have a duty to correct or warn business visitors or invitees not only of defects which are obvious or observable but also those discoverable by a proper or reasonable inspection. *Miller v. Hickey,* supra, 368 Pa. 317, 325, 81 A. 2d 910; *Coradi v. Sterling Oil Company;*

supra, 378 Pa. 68, 70, 71, 105 A. 2d 98; *Philadelphia Ritz Carlton Co. v. Philadelphia,* 282 Pa. 301, 304, 305, 127 A. 843. A latent defect by its very nature is not obvious; but the circumstances may be such as to lead a reasonable and prudent person to make an investigation. That which amounts to a reasonable inspection is a matter to be determined from the circumstances of each case. A greater degree of attention is required in the care of a passageway in frequent use than for the maintenance and care of a place seldom used. *Newingham v. J. C. Blair Company,* 232 Pa. 511, 519, 81 A. 556. Defendants here established at least one simple method for ascertaining the condition of this type of structure. It was proper for the jury to accept the standard fixed by defendants' own witness and to conclude that such would have been a reasonable inspection under the circumstances. The failure of defendants for more than seven years to make this relatively simple examination of an open wooden porch[2] which was in constant daily use for business purposes and exposed to the elements was clearly a matter for the jury to consider in finding that the conduct of defendants did not meet the applicable standard of reasonable care and diligence. For us to hold otherwise on this record would be a usurpation of a jury's function.

The court below, in an opinion by Judge EAGEN, has given the following clear and concise summation:

"It is true that the defect was not too obvious and not readily observable by a casual or general observation of the porch. However, this porch and staircase leading thereto were daily used by many customers of the defendants for the latters' gain and in many instances packages of great weight were carried over

---

[2] The pictures in evidence indicated a structure obviously unsubstantial for the use to which it was subjected.

them. They were openly exposed to the natural elements the year around. Through their seven years of ownership and use, never once did the defendants make even a casual or superficial inspection to ascertain if they were safe. Whether or not this was an exercise of reasonable care was for the jury to resolve."

Judgments are affirmed.