[Civ. No. 25352. Second Dist., Div. One. Apr. 24, 1962.]

MELVIN R. GARNER, Plaintiff and Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY et al., Defendants and Respondents.

Betts, Ely & Loomis and Albert H. Ebright for Plaintiff and Appellant.

E. D. Yeomans, William E. Still, John H. Gordon and John J. Corrigan for Defendants and Respondents.

FOURT, J.—This is an appeal from a judgment in favor of defendants in an action involving personal injuries received by plaintiff while in the course of using one of defendants' railroad cars.

Plaintiff, a 43-year-old man, was employed by Kaiser Gypsum Company as a loader of cars at Kaiser's gypsum plant in Long Beach. Defendants supplied railroad cars to Kaiser for Kaiser's operations in the hauling and delivering of its gypsum products. Although the defendants are two separate companies, for the purposes of this opinion there seems to be no reason under the circumstances and the evidence which was submitted why they should not be considered as one, and they hereinafter will be referred to as the defendant.

On February 18, 1958, between 11:30 a. m. and noontime the plaintiff, who weighed approximately 140 pounds, walked onto a flatcar No. SP 506032, which belonged to the defendant, carrying a piece of dunnage gypsum board weighing about 65 pounds, which board was to be used in preparing the car in part to receive a load of Kaiser's gypsum boards. The car had been spotted at the loading dock of Kaiser's establishment by defendant. The car was built in 1948 and is what is ordinarily termed a flatcar with sills in the middle portion thereof running from end to end with cross-members. The sills and the cross-members were decked or covered with boards about 5¼ inches wide by 2½ to 2⅜ inches thick by about 10 feet in length. The decking was about 4 feet 6 to 8 inches above the ground.

The car in question came into the yard of the railroad February 17, 1958, at about 5 p. m. A yard check of the car with other cars was made by the defendant to ascertain certain things, among them whether the car was fit for the purposes

for which it was to be used. The inspectors worked in shifts. The inspector who apparently inspected the car here involved came to work at 3 p. m. on February 17th and worked until 11 p. m. of that day. His duties required him to inspect all cars in the railroad yard. He carried a memorandum book when working and if a car was found to be defective he would place a ''Bad Order'' card on the car and note the circumstances in his book. In cases of ''Bad Orders'' the yardmaster was notified and the car would then be removed to the repair shop. The inspector worked alone and after dark he used a lantern to assist him in his work. He did not go underneath or on top of the cars in the course of his inspection. He would start at one end of the car and check the couplings, levers, brakes, wheels, packing dates, grab irons and would bleed the air, and as he walked along doing these things would glance ''. . . at the floor all the time.'' He never went up onto the floors of the cars to inspect them for weak spots or otherwise. When a car which was used by Kaiser came in with broken pieces of wallboard on the floor thereof the inspector never went upon the car to remove the debris when he made his inspection. The inspector had no special instructions except to see that the cars were safe for loading. He knew, however, that people walked upon the surface of the cars and that sometimes forkloaders weighing from 2 to 3 tons carrying weights up to 3 tons would use the surface of the car at the Kaiser plant in the loading process and that in any event a car should be safe enough for a man to walk upon the surface of the floor of the car without its collapsing. The inspector stated that he did not know what a board in the process of decay looked like, and in effect he further stated that had he seen a piece of wood which looked like one of the exhibits in evidence in this case (plaintiff's exhibit No. 6) he would not have gone onto the car and taken a closer look. The exhibit referred to is now before this court and suffice it to say the pieces of board here are so rotten or deteriorated as to be capable of being crumbled with a very small pressure from a fingernail. The plaintiff walked onto the floor of the car as heretofore indicated carrying a piece of dunnage toward the opposite end of the car. He could see clearly what was in front of him and as he walked along he kept looking to see if it was safe to continue; the light was good, the surface of the boards looked all right and there appeared to be nothing visibly wrong with the floor as he proceeded. When the plaintiff was

approaching the place where the dunnage was to be affixed his right foot and leg suddenly went through the deck flooring up to his groin and his left leg doubled underneath him. Fellow employees assisted in extracting the plaintiff from the hole thus made. Some of the pieces of the boards through which the plaintiff's leg went are as heretofore indicated by the exhibit above referred to, namely: rotten and deteriorated. The hole which was made was from 12 to 20 inches long and from 6 to 12 inches wide.

The action came on to be heard on August 24, 1960, and was tried upon the theory that the defendant owed to plaintiff a duty to make a reasonable inspection of the car to determine whether it was safe to load and either to repair or to warn of any defect disclosed by the inspection. The plaintiff asserts that the defendant breached its duty in that (1) no inspection of the car was made prior to its delivery to plaintiff's employer's plant, (2) if an inspection was made then it was cursory and superficial and did not include the floor of the car and was not geared to the conditions and circumstances which then existed, (3) the car was defective and unsafe to load for the reason that the floor contained rotten and decayed boards, (4) the rotten boards were discoverable by a reasonable inspection, (5) the defendant should have discovered the rotten boards by means of an inspection which was required, (6) the defendant failed to repair the floor or to give any warning of its dangerous condition.

The jury was instructed on September 6, 1960, and on September 7, 1960, the judge reread six of the instructions previously given. The instructions in question are set forth in footnote 1. The judge refused to give certain instructions

---

[1] "PLAINTIFF'S INSTRUCTION No. 3

"It is the law of this state that a delivering carrier of a car transporting freight owes a duty to the shipper or its employees. This duty is to use ordinary care to see that the car and its devices are reasonably safe for the work to be performed and to discover defects in said car and this duty continues although the journey of the car is ended and it has been switched upon a side track belonging to the shipper.

"This is an instruction which was given word for word in the trial of *Powell* vs. *Pacific Naval etc., Contractors*, 93 C.A.2d 629 [209 P.2d 631]. (Taken from the Clerk's Transcript of the case, on file with Second District, Div. One, D.C.A.)"

"DEFENDANT SOUTHERN PACIFIC COMPANY'S REQUESTED INSTRUCTION "No. I

"A railroad is not an insurer of the safety of its cars with respect to persons working on or about such cars. A railroad is not liable for injuries from defects which it has no opportunity to discover, from

offered by the plaintiff.[2]

The facts in the *Baltimore & Ohio Railroad Co.* v. *Hughes,* 278 F.2d 324; *Jusko* v. *Youngstown & Northern R. Co.,* 89 Ohio App. 496 [102 N.E.2d 899, 900]; and *Erie R. Co.* v. *Murphy,* 108 F.2d 817, cases cited by defendant in support of one of its instructions, are not comparable to the facts in this case. In the *Erie R. Co.* case, *supra,* the car in question was a sealed boxcar of another railroad. In the *Jusko* case, *supra,* the court held in effect that there was no duty owed to the person who was in a comparable position to the plaintiff in this case to inspect the coupling pin or coupler which was not to be used by the plaintiff in loading or unloading the car. In the *Baltimore & Ohio* case, *supra,* a freight car door was involved and the court held in effect that the evidence disclosed no defects of the door were ever revealed by any inspection.

---

defects which no reasonably careful inspection would have uncovered, or from defects apparent to an ordinarily intelligent person.

"75 C.J.S., Section 924, page 355

"*Powell vs. Pacific Naval Air Base Contractors,* 93 C.A.(2d) 629"

"DEFENDANTS' REQUESTED INSTRUCTION
"No.

"A railroad company which places empty freight cars on a spur track of an industry to be loaded by the latter's employees is under a duty to see that such cars are in a reasonably safe condition for loading, and such duty requires that the railroad company make an inspection of the cars sufficient to disclose any patent defect.

"Baltimore and Ohio Railroad Co. v. Hughes,
278 Fed. 2d 324, 327

"Jusko v. Youngstown & Northern Rd. Co.
102 N.E.2d 899, 900

"Erie v. Murphy,
108 Fed.2d 817"

"DEFENDANTS' REQUESTED INSTRUCTION
"No.

"You are instructed that a *latent* defect is one which is not discoverable by mere observation or reasonable inspection.

"Black's Law Dictionary, 3rd Edition, page 1072

"You are instructed that a *patent* defect is one which is open, evident and discoverable by reasonable inspection.

"Black's Law Dictionary, 3rd Edition, page 1336"

[2]"PLAINTIFF'S INSTRUCTION No. 5

"In the performance of the duties herein stated to you it is likewise the duty of a delivering carrier to use reasonble [sic] and ordinary care to discover defects in said car, and it is its further duty upon discovering any defect that might be in existence to warn the consignee of the existence thereof.

"This is an instruction which was given word for word in the trial of *Powell* vs. *Pacific Naval etc., Contractors,* 93 C.A. 2nd 629 [209 P.2d 631]. (Taken from the Reporter's Transcript of the case, on file with Second District, Div, One, D.C.A.)"

A verdict was returned for the defendant and this appeal followed.

Appellant contends in effect that a reading of plaintiff's instruction No. 3 as given and plaintiff's No. 5 (refused) correctly set forth the duty owed by the defendant to the plaintiff and that by refusing to give plaintiff's No. 5 and in giving the requested instructions the court emasculated the effect of plaintiff's instruction No. 3, misled the jury and incorrectly instructed the jury under the circumstances.

Appellant states that it would seem clear that the instructions must be read with reference to each other and if that be done then the jury was in effect instructed that ''A railroad company owes a duty to a shippers' employees to see that its cars are in reasonably safe condition for loading by means of an inspection sufficient to disclose any *patent* defects; however, a railroad is not liable for injuries from defects which it has no opportunity to discover, *which no reasonably careful inspection would have uncovered,* or from defects apparent to an ordinarily intelligent person.'' Appellant argues among other things that the defendant's duty was not limited to an inspection sufficient to disclose patent defects, that defendant's third instruction oversimplifies the duty owed to the plaintiff; that a combined reading of the instructions results in an instruction that the defendant's duty was limited and confined to defects which were open, evident and discoverable by mere observation and that the significant element underlying defendant's duty is whether the particular defect is discoverable by means of a reasonable inspection in the light of the conditions and circumstances existing and not whether it is patent, i.e. open and evident, or latent, i.e. hidden and not observable. Or in short it is contended that the jury was led to believe by the instructions that the defendant had adequately discharged the duty of care by a casual and visual inspection of the car in question.

The jury was instructed at 2 p.m. September 6, 1960, and apparently considered the matter until approximately 4:30 or so. At 9:30 a. m. on September 7, 1960, the jury was sent out to deliberate further and at about 10:20 a. m. the jury, which was obviously confused, called upon the court to reread the instructions on negligence, which the court did, and then the foreman of the jury, upon being asked whether there was anything further which was desired, stated in effect that they

wanted the instructions "concerning inspection." The judge's statement is set forth in footnote 3.

Appellant concedes that if the duty of defendant was satisfied by a visual inspection only, then the judgment should be affirmed. It is clear that the defect was not open or evident upon its face. There was nothing visibly wrong with the flooring.

The relationship between the plaintiff and the defendant is in some respects analogous to that of the invitor-invitee relationship. ▮ The invitor must use ordinary care to keep and maintain the premises in a reasonably safe condition and must warn of dangers known or discoverable by the performance of a reasonably careful inspection. (*Blumberg* v. *M. & T. Inc.* (1949) 34 Cal.2d 226 [209 P.2d 1]; *Buckingham* v. *San Joaquin Cotton Oil Co.* (1932) 128 Cal.App. 94 [16 P.2d 807]; *Shanley* v. *American Olive Co.*, 185 Cal. 552 [197 P. 793]; *Bazzoli* v. *Nance's Sanitarium, Inc.* (1952) 109 Cal. App.2d 232 [240 P.2d 672]; *Smith* v. *Kern County Land Co.* (1958) 51 Cal.2d 205 [331 P.2d 645]; *Raich* v. *Aldon Con-*

---

[3]"THE COURT: I am trying to cover everything, and please consider it in that light. I read from this instruction: 'You are instructed that a latent defect is one which is not discoverable by mere observation or-reasonable inspection.' That definition is taken from Black's Law Dictionary. 'You are instructed that a patent defect is one which is open, evident and discoverable by reasonable inspection.' That definition is also taken from Black's Law Dictionary. Now, 'The term "inspect" is in common use and has a well defined and generally understood meaning. To inspect means to look; to view or oversee for the purpose of examination; to look into; to view and examine for the purpose of ascertaining the quality or condition of the thing; to view and examine for the purpose of discovering and correcting errors.'

"There are others here. I don't want to put myself in a position of trying to pick out instructions. I would rather take your request.

" . . . . . . . .

"THE COURT: 'A railroad company which places empty freight cars on a spur track of an industry to be loaded by the latter's employees is under a duty to see that such cars are in a reasonably safe condition for loading, and such duty requires that the railroad company make an inspection of the cars sufficient to disclose any patent defect.' 'A railroad is not an insurer of the safety of its cars with respect to persons working on or about such cars. A railroad is not liable for injuries from defects which it has no opportunity to discover, from defects which no reasonably careful inspection would have uncovered, or from defects apparent to an ordinarily intelligent person.'

" 'It is the law of this state that a delivering carrier of a car transporting freight owes a duty to the shipper or its employees. This duty is to use ordinary care to see that the car and its devices are reasonably safe for the work to be performed thereon and to discover defects in said car, and this duty continues although the journey of the car is ended and it has been switched upon a side track belonging to the shipper.'

"Now, is there any thing in there—I am just open to any solicitation."

*struction Co.* (1954) 129 Cal.App.2d 278 [276 P.2d 822];
*Fernquist* v. *San Francisco Presbytery* (1957) 152 Cal.App.
2d 405 [313 P.2d 192]; *Sullivan* v. *Shell Oil Co.* (9th Cir.
1956) 234 F.2d 733]; *United States* v. *White* (9th Cir. 1954)
211 F.2d 79; *Miller* v. *Pacific Constructors, Inc.* (1945) 68 Cal.
App.2d 529 [157 P.2d 57]; Prosser on Torts (2d ed. 1955)
§ 78, p. 452.)

The invitor must warn of concealed perils which
he has discovered, however he is not liable to the invitee
for injuries which result from a danger which is obvious,
open, evident and apparent. (*Dobbie* v. *Pacific Gas & Elec. Co.*
(1928) 95 Cal.App. 781 [273 P. 630]; *Vitrano* v. *Westgate
Sea Products Co.* (1939) 34 Cal.App.2d 462 [93 P.2d 832];
*Brown* v. *San Francisco Ball Club* (1950) 99 Cal.App.2d 484
[222 P.2d 19]; *Pauly* v. *King* (1955) 44 Cal.2d 649 [284 P.2d
487]; *Haberlin* v. *Peninsula Celebration Assn.* (1957) 156
Cal.App.2d 404 [319 P.2d 418]; *Douglass* v. *Douglass* (1955)
130 Cal.App.2d 609 [279 P.2d 556, 46 A.L.R.2d 1370]; *Bille-
ter* v. *Rhodes & Jamieson, Ltd.* (1951) 104 Cal.App.2d 137
[231 P.2d 93]; *Moran* v. *Zenith Oil Co.* (1949) 92 Cal.App.2d
236 [206 P.2d 679]; *Trembley* v. *Capital Co.* (1949) 89 Cal.
App.2d 606 [201 P.2d 398]; *Florez* v. *Groom Development Co.*
(1959) 53 Cal.2d 347 [348 P.2d 200].)

Restatement of the Law of Torts, section 392, relates
in effect that one who supplies a chattel for another to use
for the supplier's business purposes has the duty to exercise
reasonable care to make it safe for the use for which it is
supplied; the supplier is required not only to give warning
of dangers which he knows are involved in the use of the
article or which from facts within his knowledge he knows
are likely to be so involved, but also to subject the article to
such an inspection as the danger of using it in a defective con-
dition makes it reasonable to require of him. (See also *Mon-
dine* v. *Sarlin* (1938) 11 Cal.2d 593 [81 P.2d 903]; *Harvey* v.
*Machtig* (1925) 73 Cal.App. 667 [239 P. 78]; *Douglass* v.
*Douglass* (1955) 130 Cal.App.2d 609 [279 P.2d 556, 46 A.L.R.
2d 1370]; *Hinds* v. *Wheadon* (1942) 19 Cal.2d 458 [121 P.2d
724]; *Patton* v. *Baltimore & Ohio R. Co.* (3rd Cir. 1952) 197
F.2d 732; *Brockman* v. *Aldous* (1936) 11 Cal.App.2d 650
[54 P.2d 43]; *Brosius* v. *Orpheum Theater Co., Ltd.* (1936)
16 Cal.App.2d 61 [60 P.2d 156]; *Fountain* v. *Willard-Slater
Co.* (1916) 172 Cal. 129 [155 P. 630]; *Tierstein* v. *Licht*
(1959) 174 Cal.App.2d 835 [345 P.2d 341]; *Wilson* v. *Union
Iron Works Drydock Co.* (1914) 167 Cal. 539 [140 P. 250];

*McCall* v. *Pacific Mail Steamship Co.* (1898) 123 Cal. 42 [55 P. 706]; *Moran* v. *Zenith Oil Co.* (1949) 92 Cal.App.2d 236 [206 P.2d 679]; *Miller* v. *Pacific Constructors, Inc.* (1945) 68 Cal.App.2d 529 [157 P.2d 57]; *Jaehne* v. *Pacific Tel. & Tel. Co.* (1951) 105 Cal.App.2d 683 [234 P.2d 165].)

It is apparent that the supplier or invitor must use reasonable care in the maintenance and inspection of the area, article or item to which the invitation extends. Obvious dangers are charged to the invitee. It must therefore follow that the inspection with which we are concerned is not as a matter of law satisfied by a mere visual inspection.

Whether a visual inspection will suffice depends upon the type and function of the equipment and the safety of the person or persons working upon it. (*Raconi* v. *Northwestern Pacific Railroad Co.,* 35 Cal.App. 560 [170 P. 635].) The duty to inspect and to discover hidden dangers and to remove them and to warn the invitee of such ought to be discharged with a degree of care commensurate with the danger to be anticipated. (*United States* v. *White* (1954) 211 F.2d 79; *Freeman* v. *Nickerson* (1946) 77 Cal.App.2d 40 [174 P.2d 688]; *Hinds* v. *Wheadon* (1942) 19 Cal.2d 458 [121 P.2d 724]; *Rudd* v. *Byrnes* (1909) 156 Cal. 636 [105 P. 957, 20 Ann.Cas. 124, 26 L.R.A. N.S. 134].)

The position of the defendant seems to be that the defect in the floor of the car could not have been known to it because the floor did not appear upon its face to be defective to the plaintiff and his fellow employees.

An invitor has the duty to inspect for those dangerous conditions which are caused not by any negligent act on his part but by ordinary and natural wear and tear, having a due regard for the use to which the equipment is put and the nature and stability of the equipment itself. (*Hatfield* v. *Levy Bros.* (1941) 18 Cal.2d 798 [117 P.2d 841]; *Devens* v. *Goldberg* (1948) 33 Cal.2d 173 [199 P.2d 943]; *Leenders* v. *California Hawaiian Sugar Refining Corp.* (1943) 59 Cal. App.2d 752 [139 P.2d 987]; *Wallace* v. *Speier* (1943) 60 Cal. App.2d 387 [140 P.2d 900]; *Russell* v. *Pacific Can Co.* (1897) 116 Cal. 527 [48 P. 616].)

The fact that the plaintiff invitee is not fully aware of a defect does not necessarily require the conclusion that the defect would not have been discovered had there been a reasonable examination by the invitor. (*Devens* v. *Goldberg,* 33 Cal.2d 173 [199 P.2d 943].) See also *Moran* v. *Zenith Oil*

*Co.,* 92 Cal.App.2d 236 [206 P.2d 679], where it is said at 240:

"When the occupant of land knowingly permits a person to enter the premises for the purpose of performing acts which the workman has been employed to do, the proprietor is obligated to exercise reasonable care for the protection of the toiler. He must supply a reasonably safe place in which the work is to be done and must furnish and maintain such tools and appliances as are necessary and reasonably safe for use in the operations.

"*A laborer so employed is chargeable with neither a concealed nor a latent defect in the equipment supplied. In the event he is injured as a result of a latent defect . . . he may recover . . . if it is shown that the employer, licensor or proprietor knew or by the exercise of reasonable care should have known of the defect and has failed to effect a repair thereof or to warn the workman.*" (Emphasis added.)

And in *Martin* v. *Food Machinery Corp.,* 100 Cal.App.2d 244, 248, 251 [223 P.2d 293], it is stated:

"There the general rule of the American courts is stated to be that a contractee who agreed to provide a contractor with a particular instrumentality for the purposes of the stipulated work is ordinarily liable for any injury which a servant of the contractor may sustain, during the progress of the work, by reason of a defect which was known to the principal employer, or which he might have discovered by the exercise of reasonable care, at the time when the instrumentality was turned over to the contractor. This is the rule applied in this state. (*McCall* v. *Pacific Mail Steamship Co.* [1898] 123 Cal. 42 [55 P. 706].)"

" . . . . . . . . . . . .

" . . . where one employed to do work on premises for the benefit of the owner thereof is injured as the result of a latent defect in an appliance furnished by such owner, the employee's acceptance of the appliance does not necessarily relieve the owner of liability for his injury if, in the exercise of reasonable care, he should have discovered the defect. . . . it is a question of fact whether the failure of an owner of premises to discover latent defects in an appliance furnished by such owner for the performance of such work on such premises constitutes negligence."

In *Blasi* v. *Bonnert,* 186 Pa. Super. 179 [142 A.2d 752, 755], it is stated:

"But the duty of reasonable care and diligence may

in certain circumstances impose something more than a mere cursory observation. It is clear that land owners have a duty to correct or warn business visitors or invitees not only of defects which are obvious or observable but also those discoverable by a proper or reasonable inspection. [Citing cases.] *A latent defect by its very nature is not obvious; but the circumstances may be such as to lead a reasonable and prudent person to make an investigation. That which amounts to a reasonable inspection is a matter to be determined from the circumstances of each case.''* (Emphasis added.)

On June 6, 1956, four pieces of new decking or flooring were placed upon the car in question. On October 16, 1957, about four months before the accident, approximately 30 pieces (representing approximately one-third of the car floor) of flooring of the car in question were replaced. It seems perfectly obvious that the state of decay of the floor where the plaintiff fell through it on February 18, 1958, did not come about between October 16, 1957, and the date of the accident. In other words, it would appear that the condition which existed on February 18, 1958, at the point where the plaintiff was hurt was in large part in existence on October 16, 1957, when approximately one-third of the flooring of the car in question was removed and replaced. Why the decayed material, if it was decayed in October 1957, was not discovered is not suggested.

The primary duty of defendant is to perform a reasonable inspection and that duty is not in anywise delimited by the kind of defect which may or may not exist. The conditions and circumstances of the particular situation will govern what constitutes a reasonable inspection. There is what might be termed a secondary duty, namely either to warn of or to remedy certain defects which may be uncovered by the reasonable inspection. ▮▮▮ If the defect found be an open, visible, obvious one—a patent defect—the duty to warn or to repair does not come into play because the invitee can be expected to ascertain for himself by the use of his own common sense that there is a defect. However, if in the course of the inspection a hidden defect is located then there is a duty upon the invitor which he must perform because the invitee is not charged with the knowledge of such defect and he is entitled to be protected therefrom.

▮▮▮ A railroad has the duty to use ordinary care to deliver cars which are reasonably safe for loading and unloading by the employees of the concerns to whom the cars are

delivered for use.　　It follows that there is a duty to make reasonable inspections of the cars to the end that defects therein may be ascertained and to warn of or to repair the defects thus found. (*Wabash Railroad Co.* v. *Hartog* (8th Cir. 1958) 257 F.2d 401; *Rylander* v. *Chicago Short Line Railway Co.* (1958) 19 Ill.App.2d 29 [153 N.E.2d 225]. Affirmed (1959) 17 Ill.2d 618 [161 N.E.2d 812]; *Brehmer* v. *Chicago & North Western Railway Co.* (1955) 269 Wis. 383 [69 N.W.2d 565]; *Chicago, R. I. & Pacific Railroad Co.* v. *Williams* (8th Cir. 1957) 245 F.2d 397; *Southern Ry. Co.* v. *Jones* (6th Cir. 1955) 228 F.2d 203; *Chesapeake & O. Ry. Co.* v. *Cochran* (4th Cir. 1927) 22 F.2d 22; *St. Louis-San Francisco Ry. Co.* v. *Ewan* (8th Cir. 1928) 26 F.2d 619; *Waldron* v. *Director General of Railroads* (4th Cir. 1920) 266 F. 196; *Maher* v. *Chicago, M. & St. P. Ry. Co.* (7th Cir. 1921) 278 F. 431; *Jackson* v. *Chicago, M., St. P. & P. R. Co.* (1947) 238 Iowa 1253 [30 N.W.2d 97]; *Louisville & N. R. Co.* v. *Freppon* (1909) 134 Ky. 650 [121 S.W. 454]; *D'Almeida* v. *Boston & M. R. R.* (1911) 209 Mass. 81 [95 N.E. 398, Ann.Cas. 1913C 751]; *Patton* v. *Baltimore & O. R. Co.* (3rd Cir. 1952) 197 F.2d 732; *Cox* v. *Chicago, Rock Island & Pacific Railroad Co.* (1957) 250 Minn. 187 [84 N.W.2d 263]; *Yandell* v. *National Fireproofing Corp.* (1953) 239 N.C. 1 [79 S.E.2d 223]; *Settle* v. *Baldwin* (1946) 355 Mo. 336 [196 S.W.2d 299].)

　It must be remembered that this case is not the situation of the sealed door car. Access to the flooring of the flatcars was available to the inspector at all times, had he but climbed upon the car itself.

It is fairly apparent that the inspection performed by the inspector in this case was to check against the items referred to in the Safety Appliance Act (45 U.S.C.A. §§ 1-16) which is in part to promote the safety of the employees of the railroad. Under the Federal Employers Liability Act (45 U.S.C.A. §§ 51 et seq.) a cause of action is given to a railroad employee for a violation of the Safety Appliance Act. (*O'Donnell* v. *Elgin, Joliet & E. R. Co.* (1949) 338 U.S. 384 [70 S.Ct. 200, 94 L.Ed. 187, 16 A.L.R.2d 646]; *Jacobson* v. *New York, N. H. & H. R. Co.* (1953) 206 F.2d 153; *Chicago & North Western Ry. Co.* v. *Chicago, R. I. & P. R.R. Co.* (D.C.N.D. Iowa, 1959) 179 F.Supp. 33. Affirmed (8th Cir. 1960) 280 F. 2d 110.)

There seemingly is no mention made of a floor inspection under the regulations with reference to the Safety Appliance Act. It would seem in this case that the inspector was follow-

ing exclusively the rules having to do with the Safety Appliance Act. In any event, a compliance with the regulations under that act would not necessarily fulfill the common law duty to make a reasonable inspection under the circumstances and conditions in this case. A railroad employee may recover upon a showing of negligence, even though he is unable to establish a violation of the Safety Appliance Act. (*Grundman* v. *Davis* (1922) 179 Wis. 35 [190 N.W. 839]; *Campbell* v. *Southern Pac. Co.* (1926) 120 Ore. 122 [250 P. 622]; *Kent* v. *Erie R. Co.* (1920) 228 N.Y. 94 [126 N.E. 646]; *Aldread* v. *Northern Pac. Ry. Co.* (1916) 93 Wash. 209 [160 P. 429].)

The judgment is reversed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied May 23, 1962, and respondents' petition for a hearing by the Supreme Court was denied June 20, 1962.