[Civ. No. 9234. Fourth Dist., Div. Two. Oct. 30, 1969.]

RACHAEL FITCH, Plaintiff and Appellant, v.
ARTHUR L. LeBEAU et al., Defendants and Respondents.

**COUNSEL**

Beloud & Althouse and Robert G. Beloud for Plaintiff and Appellant.

Parker, Stanbury, McGee, Peckham & Garrett, Kenneth R. Garrett and Byron J. Beam for Defendants and Respondents.

## OPINION

**KERRIGAN, Acting P. J.**—Plaintiff appeals from a judgment entered upon a jury verdict in favor of the defendants.

The parties are friends of long-standing. In May 1965 plaintiff and her husband flew to Bishop to join the defendants for fishing and "fun." The defendants had arrived in Bishop in their Dodge Motor Home about two days before. The defendants met plaintiff and her husband at the airport and the new arrivals registered in a motel three to four blocks from the trailer park where defendants' motor home was located.

The defendants had parked their motor home at a permanent mobile home park that rented space to transients. The electricity outlet was connected and the unit was hooked up to an outside culinary water source. If a sewer connection had been available, the defendants would have used it because they intended to remain in Bishop for a period of five to six days.

Defendants' unit consisted of a Dodge truck with a mobile home or trailer-like chassis. It contained a table with two seats, a davenport, kitchen, bunks, closets, and a rest room. It was designed for traveling and parking at camp sites where it could be utilized for camping and recreation. It was equipped with wall-to-wall carpeting which was fitted and laid by the defendants. The carpeting material was nylon shag with strings approximately 1 to 1½ inches in length.

In January-February 1964, the defendant Arthur L. LeBeau attempted to replace the refrigerator. In doing so, he dropped the refrigerator near the entrance of the motor home and tore the carpeting. It was a three-cornered tear, having sides approximately 4 to 6 inches in each direction. When the flap of the tear was flush with the rise of the carpeting, and the nap was up, the tear could not be observed. Needless to say, the tear went unrepaired.

After their arrival in Bishop, the plaintiff and her husband visited the defendants at the motor home around noon. The foursome then went shopping together in the defendants' jeep. After shopping, the two ladies remained at the motor home while the men went fishing. After spending 1½ hours with Mrs. LeBeau, the plaintiff returned to her motel to freshen up. Around 5-5:30 p.m. plaintiff and her husband returned to the trailer park to enjoy a dinner date with the defendants. The two men met outside the motor home and chatted with the trailer park manager while plaintiff proceeded inside. A sudden gust of wind blew the trailer door out of the plaintiff's hand as she went up the steps to the floor of the mobile unit. Although she looked at the steps and the floor at the time she entered, she did not notice the rip in the carpeting. Plaintiff had no knowledge as to

where the carpeting was torn, nor had the tear ever been shown to her. She was carrying her purse in her left hand when she ascended the steps into the motor home, and she laid her purse on a small table near the door and started to return to close the door. As she proceeded towards the entrance, her foot did not raise from the floor and she fell directly out of the door onto the ground below, sustaining a fracture of the left arm. When plaintiff entered and fell, Mrs. LeBeau was evidently facing the kitchen sink performing a household chore.

After plaintiff had been taken to the hospital, the defendants returned to the motor home, and Mrs. LeBeau noticed a rise in the carpeting just inside the entry of the motor home in the area of the tear. The tear was in about the same condition as it was at the time that it originally occurred.

The case was tried on the issues of negligence, contributory negligence, and damages. The trial was conducted in February 1968, and the court gave the following instructions to the jury:

1. "Everyone is responsible . . . for an injury occasioned to another by his want of ordinary care or skill in the management of his property. . . ." (Civ. Code, § 1714.)

2. "A licensee is a person who is privileged to enter or remain on premises only by virtue of the express or implied consent of the owner." (BAJI 212 (Rev.).)

3. "When the licensee's presence on the premises of another is known to the licensor, or when the latter has good reason to expect, or, in the exercise of ordinary care ought to know, of the presence of the licensee, the licensor is bound to exercise ordinary care to avoid injuring the licensee; except, however, the owner of premises is under no duty to a licensee to alter or repair the premises as they existed when the licensee entered (BAJI 212-B (Rev.), as modified) or to maintain his land or any structure thereon in a safe condition." (BAJI 212-B-2, as modified.)

While this appeal was pending, the Supreme Court rendered its decision in *Rowland* v. *Christian,* 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561], wherein it formulated new tests to be applied to the liability of the owner or possessor of land for negligence and want of ordinary care or skill in the management of property, and ruled that plaintiff's status as a trespasser, licensee or invitee is not determinative of liability.

The critical issue is whether the trial court erred in its instructions defining the defendants' duty to plaintiff.

Inasmuch as the motor home was parked in a recreational trailer park and was being utilized as a residence at the time plaintiff sustained injury, the principles of law involving the duties owed by an owner or occupier of land are applicable. The trial was conducted on the theory that defendants were to be regarded as owner-occupiers of land. Counsel also conceded at oral argument on appeal that in view of the obvious fact that the motor

home was being utilized exclusively as a residence at the time of the fall that landowner principles control.

It was formerly the law of California that a landowner or possessor owed certain affirmative duties of care with respect to activities or conditions on the land to persons who came on the land; the nature of the respective duties varied depending on the classification of the person who came upon the land: trespasser, licensee or invitee. (2 Witkin, Summary of Cal. Law (7th ed. 1960) Torts, § 245, p. 1440.) A landowner owed a trespasser the duty of merely refraining from intentional harms or willful and wanton injury and had no duty to keep the premises in safe condition. (*Giannini* v. *Campodonico,* 176 Cal. 548, 550 [169 P. 80]; *Boucher* v. *American Bridge Co.,* 95 Cal.App.2d 659, 667 [213 P.2d 537].) To a licensee, the duty was practically no greater than that owed to a trespasser, i.e., the licensee assumed the risks incident to the condition of the premises, and the landowner was not bound to inspect and keep the premises safe, unless he had knowledge of a dangerous condition and had reason to believe the licensee would not discover it, in which instance the possessor was required to remedy the condition or warn the licensee. (Rest., Torts, § 342; *Simpson* v. *Richmond,* 154 Cal.App.2d 27, 30-31 [315 P.2d 435]; *Newman* v. *Fox West Coast Theatres,* 86 Cal.App.2d 428, 431 [194 P.2d 706].) A social guest was ordinarily regarded as a licensee. (*Simpson* v. *Richmond, supra,* p. 29; *Saba* v. *Jacobs,* 130 Cal.App.2d 717, 718 [279 P.2d 826].) The duties owed to an invitee were greater in that the landowner was required to correct or warn against known dangerous conditions, to reasonably inspect the property to discover unknown defects, and to exercise ordinary care to keep the premises in reasonably safe condition. (*Blumberg* v. *M & T Incorporated,* 34 Cal.2d 226, 229 [209 P.2d 1]; *Garner* v. *Pacific Elec. Ry. Co.,* 202 Cal.App.2d 720, 727 [21 Cal.Rptr. 352, 99 A.L.R.2d 165]; Rest., Torts, § 343.)

 The traditional classifications of trespasser, licensee and invitee have been abrogated. In actions involving liability of the possessor of land, section 1714 of the Civil Code governs; it provides that everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by reason of his want of ordinary care or skill in the management of his property. (*Rowland* v. *Christian, supra,* 69 Cal.2d 108, 111-112.) The occupant of land is responsible for an injury caused to another by his want of ordinary care and skill in the management of his property. (*Ibid.,* pp. 118-119.) The proper test to be applied to the liability of the possessor of land is whether, in the management of his property, he has acted as a reasonable man in view of the probability of injury to others and, although the plaintiff's status as a trespasser, licensee or invitee may, in the light of the facts giving rise to such status, have some bearing on the question of liability, the status is not determinative. (*Ibid.,* p. 119.) "Where the occupier of land is aware of a concealed

condition involving in the absence of precautions an unreasonable risk of harm to those coming in contact with it and is aware that a person on the premises is about to come in contact with it, the trier of fact can reasonably conclude that a failure to warn or repair the condition constitutes negligence." (*Ibid.*, p. 119.) A social guest is reasonably entitled to rely upon a warning of a dangerous condition so that he, like the host, will be in a position to take special precautions when he comes in contact with it. (*Ibid.*, p. 119.) The original common law classifications have been rejected, and a court should approach the issue of a duty of the occupier or possessor on the basis of ordinary principles of negligence. (*Ibid.*, pp. 118, 119.)

In the case under review, the court rendered conflicting instructions. While it properly informed the jury that the defendants were obliged to use ordinary care in the management of their property (Civ. Code, § 1714), it also advised the jury that the defendants were under no duty to repair the premises (BAJI 212 (Rev.)) nor to maintain their mobile home in a safe condition. (BAJI 212-B-2.) The former rules governing a landowner's duty to a licensee (BAJI 212-B) are inconsistent with the liability principles defined in *Rowland, supra.* (*Carlson* v. *Ross,* 271 Cal.App.2d 29, 32 [76 Cal.Rptr. 209].) It necessarily follows that as a result of the incompatible instructions given in the case under review, the jury must have been thoroughly confused. In fairness to court and counsel, it should be noted that the *Rowland* formula governing liability of a possessor of land had not been enunciated at the time of trial.

The judgment is reversed.

Tamura, J., and Hilliard, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.